# Richmond.

McIntyre v. Smyth.

November 19, 1908.

1. Pleading—*Signature of Counsel—Amendment.*—Pleadings should be signed by counsel, but it is no abuse of discretion of a trial court to permit them to be so signed when attention is called to the fact, and thus remove the ground of objection.

2. Pleading—*Amending Declaration—Inserting Additional Defendants.*—It is not error for a trial court to permit a plaintiff to amend his declaration by the insertion of the names of additional members of a defendant firm discovered since the declaration was filed.

3. Evidence—*Order of Introduction—Principal and Agent.*—The order in which evidence is introduced is a matter within the discretion of the trial court. It is more regular, perhaps, to establish an agency first, and then introduce evidence as to the liability of the principal by reason of the agent's acts, but if the agency and the liability of the principal for his acts be in fact established, the order in which the evidence was introduced to establish these facts is not reversible error. The question is not so much as to the order of proof, but its sufficiency.

4. Principal and Agent—*Proof of Agency—Relation to Third Persons—Case at Bar—Verdict.*—One person may be the agent of another as to third persons, although as between themselves, the relation of principal and agent does not in fact exist. The contract between the parties is not alone to determine the questions when the rights of third persons are concerned, but that is to be considered along with all the other facts and circumstances given in evidence which bear upon the question of agency. In the case at bar, the evidence was such as to warrant the trial court in giving an instruction to that effect, and to support the verdict of the jury establishing such an agency so far as the rights of the plaintiff were affected.

5. Contracts—*Illegality—Gaming—Burden of Proof.*—The burden of proving illegality in the consideration of a contract rests upon the defendant. If a defendant seeks to avoid liability on a contract for the sale of stocks or commodities on the ground that it is a gaming contract, the burden is upon him to show by a preponderance of the

evidence to the satisfaction of the jury that neither buyer nor seller intended or contemplated an actual purchase or sale of such stocks or commodities.

6. Gaming Contracts—*Games of Chance—Stock Gambling—Code, Sec. 2837.*—If it be conceded that when section 2838 of the Code was first enacted in 1829, stock gambling was unknown, and that its framers had in view such gambling as is embraced in games of chance with cards, dice and the like, yet, if it appears that the language is broad enough to embrace other forms of gambling, the courts would be bound to give it effect, and to apply it to every form of gambling which comes fairly within its terms. Under the express terms of section 2837 it is declared to be a remedial statute, and hence should be liberally construed.

7. Gaming Contracts—*Code, Sec. 2837—Instructions—"Paid" Instead of "Lost."*—It is provided by section 2837 of the Code that if any person "lose" to another within twenty-four hours, seven dollars or more, he may recover it back, while an instruction given under that section, in its latter clause, uses the word "paid" instead of "lost." This change in phraseology is immaterial, where it appears that, taking the instruction as a whole, the jury could not have been misled.

8. Gaming Contracts—*Sale on "Margin"—Sale Where Seller Has Not the Goods.*—A sale of stocks or goods "on margin" where neither party contemplates or intends an actual delivery is illegal, but if the parties intend that the stocks or goods shall be delivered, the transaction is valid, even though at the time of sale the seller did not have the goods, and had no means of getting them except by purchase on the open market.

9. Pleading—*Joint Defendants—Several Judgments—Code, Sec. 3395.*—Under the provisions of section 3395 of the Code, relating to actions on contract against two or more defendants, there may be a judgment in favor of some of the defendants at one time, and against others at another, and it applies to actions on contract against two or more defendants, when the defense of some is personal to themselves, though the defense is that they never were parties to the contract sued on, as *non est factum.*

10. Excessive Verdict—*Duty of Trial Court—Correction on Writ of Error.*—Upon a motion to set aside a verdict as contrary to the evidence it is the duty of the trial court to determine from the evidence whether the plaintiff has maintained his action in whole or in part. If upon a review of the evidence it plainly appears that the damages awarded the plaintiff by the jury are too large, the trial court may, in its discretion, set aside the verdict and award a new trial, or it may put the plaintiff upon terms to abate the

amount of the verdict in his favor, if there is in the evidence plain proof as to the correct sum which the jury should have awarded. If the trial court fails to do either, and the case is brought up on a writ of error awarded to the defendant, and the record affords plain and certain proof by which an error as to the amount which the plaintiff should have recovered can be corrected, this court will correct the error and render such judgment as the trial court ought to have entered.

Error to a judgment of the Corporation Court of the city of Staunton in an action of *assumpsit*. The only counts in the declaration were the common counts. Judgment for the plaintiff. Defendant assigns error.

*Amended and Affirmed.*

The opinion states the case.

*John W. Stephenson* and *Patrick & Gordon,* for the plaintiff in error.

*Braxton, Ker & McCoy* and *Timberlake & Nelson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This was an action in *assumpsit,* instituted by Thomas Smyth against T. A. McIntyre & Company in the Corporation Court of the city of Staunton, which resulted in a verdict and judgment for the plaintiff, and the case is before us upon a petition which assigns certain errors in the rulings of the trial court.

It appears that one R. D. Armstrong, prior to the institution of this suit, had been conducting a broker's office in the city of Staunton, and had made arrangements with the firm of T. A. McIntyre & Company, of New York, to furnish him market quotations of stocks, grain and cotton over a private wire owned by McIntyre & Company, connecting their office at Hot Springs, Va., with their office in New York. Over this wire Armstrong was furnished by McIntyre & Company with daily quotations from various exchanges in New York city of which their firm was a member.

The first assignment of error is that the corporation court overruled the demurrer of the defendant to the plaintiff's declaration, the demurrer being interposed upon the ground that the declaration was not signed. The court overruled the demurrer, permitted the declaration to be signed, and the case was thereupon proceeded with.

It is the better practice to require all pleadings to be signed by counsel. It is said by Mr. Minor to be a wholesome rule. But without stopping now to inquire whether the objection can be made by demurrer, it is certain that the court was within the proper exercise of its discretion when it permitted counsel to sign the declaration and thus remove the ground of objection.

The second error assigned is that the trial court allowed the defendant in error to amend his declaration by inserting the names of the firm of T. A. McIntyre & Company, to-wit: T. A. McIntyre, J. Edward Hulshizer, John G. McIntyre and Edward T. White. The declaration, as originally framed, was against T. A. McIntyre, trading and doing business as T. A. McIntyre & Company. Defendant in error subsequently ascertained that the firm was composed of a number of persons, and the trial court permitted him to amend his declaration by the insertion of their names.

There was no error in this ruling.

The third assignment of error is that the corporation court erred in overruling the motion of plaintiff in error to reject the testimony of certain witnesses, as tending to establish the liability of plaintiff in error as principal of Armstrong, before proof of the fact of Armstrong's agency had been first introduced.

One of the principal contentions in the case was, as to whether or not R. D. Armstrong was the agent of T. A. McIntyre & Company in Staunton. The testimony of the witnesses objected to tended to prove the liability of T. A. McIntyre & Company, as principal, to the defendant in error.

The order in which proof is introduced is a matter within the discretion of the trial court. It is more regular, to estab-

lish first the agency and then introduce proof as to the liability of the principal by reason of the agent's acts; but if upon the whole case the agency of Armstrong and the liability of T. A. McIntyre & Company, as principal, for his acts as their agent be established, the order in which the evidence tending to establish those facts was introduced would not constitute reversible error.

The fourth assignment of error is that the corporation court erred in giving the first four instructions asked for by the defendant in error.

In the first instruction the court sets out in detail the facts relied upon by the defendant in error to entitle him to recover. We have examined the evidence with much care, and are of opinion that, with respect to every fact upon which that instruction is predicated, there was evidence before the jury sufficient to warrant the court in granting the instruction as prayed for.

The instruction is as follows: "The court instructs the jury, that if they believe from the evidence that R. D. Armstrong represented himself to be the 'correspondent' of T. A. McIntyre & Company, that this representation was made with the knowledge of T. A. McIntyre & Company, and without objection on their part; that Armstrong used in his office a quotation board furnished him by T. A. McIntyre & Company, containing in conspicuous letters the name and address of T. A. McIntyre & Company; that T. A. McIntyre & Company, installed at their own expense a private telegraph wire connecting the office of Armstrong with their principal office in New York city; that T. A. McIntyre & Company furnished over this private wire to Armstrong during the business hours of the stock exchange continuous market quotations on stocks, bonds, grain and cotton, which were immediately posted on the said quotation board for the information of patrons resorting to Armstrong's office to trade; that over said private wire T. A. McIntyre & Company also caused to be transmitted their daily market letters; that customers resorting to Armstrong's office

and desiring to trade in any one of the different stocks or commodities, whose quotations were posted, gave a verbal or written order to buy or sell certain cotton, grain or stocks, and that such order was thereupon transmitted by the said Armstrong in his own name over the said private wire to the office of the said T. A. McIntyre & Company at New York, and executed by them; that immediately thereupon confirmation was wired back by McIntyre & Company which consummated the deal; that customers trading at Armstrong's office were designated by a certain number which was used by Armstrong in transmitting the order and by McIntyre & Company in confirming the same; that Armstrong did not participate in the loss nor the profit incurred in the trades of the customers, but received as compensation a fixed sum whether the trade resulted in a profit to T. A. McIntyre & Company or to the customer; that said compensation was the compensation received by said McIntyre & Company and none other; that the said Armstrong deposited the margins received by him from customers to the credit of T. A. McIntyre & Company in a local bank; that an account in the name of T. A. McIntyre & Company was regularly run in said local bank, and that the said T. A. McIntyre & Company drew out the money to their credit in said account directly; that said Armstrong drew on said McIntyre & Company through said local bank for sums due to him or to said customers, which said drafts were paid by McIntyre & Company; then the jury will be warranted in finding that the said Armstrong was the agent of the said T. A. McIntyre & Company so far as the rights of the plaintiff here are affected, notwithstanding the fact the relations between the said McIntyre & Company and said Armstrong are expressly disclaimed by them to be those of principal and agent, and even though as between themselves such relation did not in fact exist."

The right of defendant in error to recover depends upon whether or not Armstrong was the agent of McIntyre & Company; and the instruction under consideration embodies the facts relied upon to establish the agency of Armstrong.

In *Board of Trade of City of Chicago* v. *Hammond Eleva-tor Co. and Western Union Telegraph Co.*, 198 U. S. 424, 49 L. Ed. 1111, 25 Sup. Ct. 740, the facts are strikingly like those stated in the instruction under consideration. The facts show-ing the relations between the Chicago Board of Trade and the Hammond Elevator Company and the Western Union Tele-graph Company are thus stated in the opinion of the court: "The company maintains a place of business at Hammond, Indiana, and had under lease from the Western Union Tele-graph Company the exclusive use, during business hours, of certain telegraph wires running from Hammond to certain offices in different cities in Illinois, including Peoria and Aurora, where the parties served with process lived. In the lease of these wires, signed by defendant, the offices of these 'correspondents' are designated as offices of the defendant, and are contained upon regular printed forms prepared by the com-pany. The cost or rental of these wires was paid to the tele-graph company by the defendant. Over these wires the defend-ant caused to be transmitted continuous market quotations of the New York stock exchange to persons standing in relation of Babb and Battle & Dickes, who are called 'correspondents,' and who posted these quotations upon blackboards in their respective offices.

"Customers resorting to the correspondents' offices, and desir-ing to trade in any one of the sixty different stocks whose quo-tations are posted, give a verbal or written order to buy or sell certain grain or stocks, which is transmitted by the corre-spondent in his own name over the private wire of the corre-spondent running into his office from the office of the defendant at Hammond, as an offer by the correspondent to buy from or sell to the defendant. Sometimes the price is mentioned by the customer, and sometimes not. In the latter case it is under-stood that the trade is to be at whatever the market is. When the order is given the correspondent exacts from the customer such margin as he sees fit, unless the customer already has

money on deposit with the correspondent, or is of known financial responsibility. Defendant accepts these orders when the state of the market justifies, by return message over the same wire, the contents of which are communicated by the correspondent to the customer. The individuality of each trade is preserved throughout by a number given to it by the correspondent's operator at the outset. The correspondent, upon receipt of this return message, gives the trader a memorandum showing the trade and the price to which his margin carries it, and except in case of a losing trade, where he has failed to protect himself by securing from the customer a sufficient margin, the correspondent neither participates in the loss nor the profit incurred in the trade. He derives as his compensation a fixed sum, whether the trade results in a profit to the defendant or to the customer. Through daily statements and daily settlements of the balance shown thereby, the correspondent remits to the defendant, through its local bank, whatever amounts are shown to be due from him to the defendant for margins, wire service, etc. When the trader wishes to close a trade thus opened, the correspondent, in like manner, receives and transmits the order over his wire to the Hammond Company, giving to the telegram the number of the order already given to the trade. The order is executed at Hammond the same way as the opening order. * * *

"The relations of the correspondent with the elevator company are in each case fixed by formal contract, to the effect that the parties shall deal as principals, and that the relations of principal and agent shall neither exist nor be held to exist. There is no evidence that the correspondents Babb and Battle & Dickes have claimed or represented themselves to be agents of the defendants.

"The fact, however, that the relations between the defendant and its correspondents are, as between themselves, expressly disclaimed to be those of principal and agent, is not decisive of their relations so far as third parties dealing with them upon the basis of their being agents are concerned."

It is rare that two cases are found presenting so many points of resemblance as exist between the case before us and that from which the foregoing extract is taken.

The second instruction asked for by defendant in error and given by the court merely tells the jury that "every contract is presumed to be made with honest intent by the parties making the same, and the burden of proving that the contract in question in this case was not made with such intent rests upon the defendants. The court further instructs the jury, that before they can find that the contract between the plaintiff and defendants was illegal, for the reason that it was a gambling contract, the defendants are required to prove by a preponderance of evidence to the satisfaction of the jury, not only that Thos. Smyth did not intend or contemplate the actual purchase of the stocks or the commodities ordered by him from the defendants, T. A. McIntyre & Company, but must also prove by a preponderance of evidence to the satisfaction of the jury that the defendants, T. A. McIntyre & Company, likewise did not intend or contemplate the actual purchase of such stocks or commodities for the plaintiff."

The third instruction asked for by the defendant in error tells the jury, that "under the statute law of Virginia one who has lost to another, within twenty-four hours, $7.00 or more, or property of that value, and has paid or delivered the same may recover it back from the winner by suit, according to the interest or value, provided the suit is brought within three months after such payment or delivery. The court, therefore, instructs the jury, that even though they believe from the evidence in this case that it was never intended by either the plaintiff or the defendant, T. A. McIntyre & Company, that there should ever be any actual purchase or delivery of the stock or commodity ordered by the plaintiff from the defendants, yet if the jury further believe from the evidence that the said plaintiff paid $7.00 or more, within a period of twenty-four hours, to the said defendant, or to their agent, and that such payment

was made not more than three months prior to the institution of this suit, the jury must find a verdict in favor of the plaintiff, for such part of his claim itemized in his bill of particulars as is made up of margins deposited."

The objection to this instruction seems to be, that section 2837 of the Code was intended to apply to ordinary games of chance with cards, dice, etc., and not to gambling in futures. This statute was first introduced into the Code of 1819, vol. 1, p. 562, at a time when, as plaintiff in error asserts, stock gambling was unknown.

If it were conceded that the framers of the statute had in view the suppression of such gambling as is embraced in games of chance with cards, dice, etc., yet, if it appears that the language is broad enough to embrace other forms of gambling, the courts would be bound to give it effect and to apply it to every form of gaming which comes fairly within its terms.

By section 3837 it is provided, that "All laws for suppressing gaming, lotteries, unchartered banks, and the circulation of bank notes for less than five dollars, shall be construed as remedial"—that is, they shall be given a liberal construction.

It may be well to say at this point, that the contention of defendant in error is that the dealings between him and McIntyre & Company, were not gaming transactions. Plaintiff in error, on the other hand, contends that they were mere dealings in futures which never contemplated the actual delivery of stocks, but merely had in view the adjusting of differences in market value. To meet this aspect of the case, in the event the jury should take the plaintiff in error's view of the transaction, defendant in error offered the instructions based upon section 2837; his contention being that, as there was no element of gaming in the transaction between himself and plaintiff in error, he had a plain right to recover upon the evidence submitted by him, but if the jury were of opinion that the dealings in proof before them constituted a gambling transaction, the plaintiff still had a right to recover under the statute in such cases made and provided.

Another objection taken by plaintiff in error to the instruction is that section 2837 provides, that if any person *"lose"* to another within twenty-four hours seven dollars or more, he may recover it back, while the instruction in its latter clause uses the word "paid" instead of "lost."

Taking the instruction as a whole, we do not think the jury could have been misled by the change of phraseology.

The fourth instruction tells the jury: "That the question as to whether or not one is agent for another with power to bind his principal where the interest of outside parties is involved, is one to be determined not alone by the actual contract between the parties as to whom it is sought to establish the relation of principal and agent, but that is to be considered together with all the facts and circumstances which in addition bear thereon. The question of agency in this case is to be determined by the jury from all the evidence relating to the transaction of the business and all the facts and circumstances connected with the same, both as between T. A. McIntyre & Company and R. D. Armstrong and between said McIntyre & Company and said R. D. Armstrong and parties dealing with them."

We think that these instructions correctly propounded the law as applied to the evidence.

The fifth assignment of error is that the lower court erred in refusing to give the first and third instructions, as offered by plaintiff in error, and in giving the third instruction as amended by the court.

The first instruction is as follows: "The court instructs the jury that the agency of R. D. Armstrong for T. A. McIntyre & Company as principals must be proven to exist before there can be any introduction of evidence by the plaintiff showing or tending to show acts or statements done or made by said Armstrong as such agent, and unless the jury shall believe from the evidence that the fact of the agency of Armstrong as aforesaid was proven before the introduction of evidence showing or tending to show such acts or statements by him, then such evi-

dence so showing or tending to show such acts or statements is inadmissible and cannot be considered by the jury."

We have sufficiently considered the proposition embodied in this instruction in passing upon the admissibility of certain evidence. There, of course, must be evidence that Armstrong was the agent of T. A. McIntyre & Company, and further evidence of such acts on his part as agent as are sufficient to bind T. A. McIntyre & Company, as his principal, in order to maintain the judgment in this case, and, as we have already said, it is safer first to prove the agency and then the acts of the agent relied upon to bind the principal, but after all the question is not so much as to the order of proof as to the sufficiency of the proof to establish those propositions; and if upon the whole record it appears that Armstrong was the agent of McIntyre & Company, and as such agent did such acts as would bind his principals, the order in which the proof was introduced will not require a reversal of the judgment.

Instruction No. 2 asked for by plaintiff in error was given by the court, and as it will tend to show that upon the whole case the jury was properly and sufficiently instructed, it is well that it should appear in this opinion. It is as follows:

"The court instructs the jury, that in order to establish the agency of Armstrong, the mere fact that he held himself out to the public as correspondent of McIntyre & Company is not sufficient, although said McIntyre & Company may have known that he so held himself out; but there must have been some other act or representation of agency done or made by Armstrong, with the knowledge or acquiescence of McIntyre & Company, from which the jury may reasonably and fairly infer that such agency existed, before the jury can find a verdict for the plaintiff."

We think that instruction quite as favorable to the plaintiff in error as it should have been.

The third instruction asked for by plaintiff in error is as follows: "The court instructs the jury, that if they shall believe from the evidence that the plaintiff, Thomas Smyth, bought

from either T. A. McIntyre & Company or R. D. Armstrong, the defendants in this case, stocks, corn, wheat or cotton on margins, and that the amount sued for here is the amount put up by said plaintiff, Smyth, on account of said margins and the profits derived or to be derived from said purchases on margins; and if they shall further believe from the evidence that the said plaintiff, Smyth, had no intention at the time of putting up said margins or any part thereof to purchase and receive the said stocks, corn, wheat, cotton or any part of any of them, and that there was no intention on the part of the sellers, whether said sellers were T. A. McIntyre & Company or R. D. Armstrong, to deliver the same, there can be no recovery by the said plaintiff and the jury must find for the defendant."

This instruction the court refused to give, as asked for, but gave it with the following addition: "but if the parties intended that the goods were actually to be delivered by the seller to the buyer, said transactions are valid, even though at the time of the sale the seller had not the goods and no other means of getting them except to go into the open market and buy them, but such contract is valid where the parties really intended and agreed that the goods were to be delivered by the seller and to be paid for by the buyer."

We are of opinion that there was no error in this instruction; and that upon the whole case the jury were properly instructed.

This brings us to the sixth assignment of error. The suit, as originally brought in the corporation court, was against T. A. McIntyre, doing business as T. A. McIntyre & Company, and R. D. Armstrong. Afterwards it was made to appear that the firm of T. A. McIntyre & Company was composed of a number of persons; and thereupon the corporation court, by an order, permitted the plaintiff to proceed at once against T. A. McIntyre and R. D. Armstrong, and continued the case as to the other four members of the firm of T. A. McIntyre & Company. The jury found a verdict for the plaintiff against the two defendants, T. A. McIntyre and R. D. Armstrong, and

thereupon T. A. McIntyre submitted a motion to set aside the verdict as being contrary to the law and the evidence; but the court, of its own motion, set aside the verdict as to Armstrong as being contrary to the evidence, and entered judgment against T. A. McIntyre.

The contention of plaintiff in error is that the court should have made a final disposition of the case as to Armstrong; and that, in order to make good the judgment against plaintiff in error, the court, after setting aside the verdict as to Armstrong, should have dismissed the case from the docket as to him, or else made some other final disposition of it so far as he was concerned.

We do not perceive how plaintiff in error was injured by the failure of the court to dismiss the case from the docket as to Armstrong; but however that may be, the action of the court seems to be authorized by section 3395 of the Code.

"In an action, founded on contract, against two or more defendants, although the plaintiff may be barred as to one· or more of them, yet he may have judgment against any other or others of the defendants, against whom he would have been entitled to recover if he had sued them only."

"Under this section," said this court in *Bush* v. *Campbell,* 26 Gratt. 403, "there may be judgments in favor of some of defendants at one time and against other defendants at another, and it applies to actions on contract against two or more defendants, where defense of some is personal to themselves, though the defense is that they never were parties to the contract sued on, as *non est factum.*"

The seventh assignment of error is that the court refused to set aside the verdict upon the following grounds: (1) That Armstrong was not the agent of T. A. McIntyre & Company for any purpose; (2) that Armstrong's dealings with the defendant in error, Smyth, were in the nature of gaming contracts on margins, and that there was no intention on the part either of Smyth or Armstrong to receive or to deliver the stocks

and commodities dealt in. The financial condition of the respective parties, as shown by the record, demonstrates the whole business was a gambling speculation in margins; (3) that if any judgment were rendered for Smyth, it should have been against Armstrong, and not against your petitioner."

In discussing the preceding assignments of error, we have reached the conclusion that the corporation court committed no error in the admission of testimony; that the jury were properly instructed; and that there was evidence tending to prove all the facts upon which the several instructions were predicated; and, without now going further into the evidence, we are of opinion that upon all of the controverted questions there was evidence sufficient to require that the case be submitted to a jury, and upon familiar principles their verdict cannot be disturbed, except upon a point now to be presented.

The jury rendered their verdict for the sum of $883.25, the full amount claimed by the defendant in error in his declaration. The motion to set aside the verdict as contrary to the evidence authorized and required the court to determine upon the evidence whether the plaintiff had maintained his cause of action in whole or in part. If upon a review of the evidence it plainly appeared that the damages awarded by the jury were too large, the trial court might in its discretion set the verdict aside and award a new trial, or it might put the plaintiff upon terms to abate the amount of the verdict in his favor, if there was in the evidence plain proof as to the correct sum which the jury should have awarded.

Turning to the plaintiff's own evidence, read in connection with the statement of his account, we find, in the account, items of profit upon several transactions aggregating $353.25, from which is to be deducted a loss on cotton of $70, leaving of profits $283.25; amount invested $400, a second item of amount invested $200; making an aggregate of $600 cash, which he claims to have furnished McIntyre & Company, which added to the $283.25 makes the sum of $883.25, for which the jury rendered

their verdict. This account is dated May 10, 1906. In the plaintiff's testimony it appears that he was asked:

"Q. I understand you got a check from him (*i. e.,* from Armstrong) for $400? A. That was for business previous to that time.

"Q. How much did you ever put up with him? A. $700 or $800, and I got $400 at one time.

"Q. You are $300 or $400 short? A. Yes, sir. That is right."

Giving the plaintiff the largest sum consistent with his own statement of his case, the verdict should not have been for more than $400.

We are, therefore, of opinion that, as the record affords plain and certain proof by which the error can be corrected, it is proper for this court to render such judgment as the corporation court ought to have entered; and that the verdict should be reduced to $400, and judgment entered for that amount, with interest thereon from May 10, 1906, till paid. *Bowyer* v. *Hewett,* 2 Gratt. 193; *Lewis* v. *Arnold,* 13 Gratt. 454; 4 Min. Inst. (1st ed.), pt. 1, p. 870.

In all other respects the judgment of the corporation court is affirmed.

*Amended and Affirmed.*