### Richmond.

## J. C. LYSLE MILLING COMPANY V. S. W. HOLT AND COMPANY.

### March 21, 1918.

1. ORDER OF PROOF—*Discretion of Court.*—The order in which proof is introduced is a matter in the discretion of the trial court.

2. AGENCY—*Authority—Declaration of Agents.*—While the declarations of an alleged agent are inadmissible to prove agency, if the agency be otherwise *prima facie* proved, they become admissible in corroboration.

3. AGENCY—*Authority.*—While, as between principal and agent, the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third parties ignorant thereof; and as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no obligation to inquire into the agent's actual authority.

4. AGENCY — *Authority — Commercial Travelers or Drummers.*— There is inherent difficulty in proving the scope of a traveling salesman's authority where it depends upon parol testimony, especially where the principal is a corporation and a non-resident. In the case at bar the question at issue was whether an agent of defendant had authority to make a sale, or whether his authority was limited to taking an order subject to acceptance and confirmation by defendant. There was direct testimony tending materially to show that the authority of defendant's agent carried with it the authority to make sales, and that he was not merely a drummer, or commercial traveler, in the narrow sense of that term, with authority only to take orders subject to acceptance and confirmation by his principal, and therefore, the court properly allowed the ques-

tion of the agent's authority to make the sale in question to go to the jury.

5.  INSTRUCTIONS—*Instructions not Certified—Appeal and Error.*— Before the Supreme Court of Appeals can hold that the giving of an isolated instruction constituted reversible error, in a case where all the instructions are not certified, it will have to clearly appear that the instruction in itself was vitally wrong, and that other instructions could not have cured the error.

6.  INSTRUCTIONS—*Instructions not Certified—Appeal and Error.*— In the case at bar, the particular instruction complained of was susceptible of application to more than one feature of the evidence. The instruction itself, taken with another which was admittedly given, shows that the jury could not have been misled by it upon the decisive and only really controverted question of the agent's authority to make sales of flour without confirmation, and the instructions as a whole might have still further remedied the error complained of, if error it was.

Error to a judgment of the Circuit Court of Elizabeth City county. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Peatross & Savage,* for the plaintiff in error.

*J. Winston Read,* for the defendants in error.

KELLY, J., delivered the opinion of the court.

This is an action of assumpsit brought by S. W. Holt & Company, a partnership, in Newport News, Va., against the J. C. Lysle Milling Company, a corporation created by and doing business in the State of Kansas, to recover damages for a failure on the part of the defendant to deliver certain flour alleged to have been purchased from it by the plaintiffs. There was a verdict and judgment in the court below for the plaintiffs, and the defendant brings the case here upon a writ of error. We will designate the parties

here as plaintiffs and defendants, respectively, in accordance with their positions in the lower court.

The controlling question in the case is whether the evidence of the authority of J. G. Fitzhugh, the alleged agent of the defendant who made the contract of sale, was sufficient to support the verdict of the jury. If there was such evidence, then the assignment of error based on the fact that the court allowed proof of certain declarations of the agent to go to the jury before the agency was established must fail, because the order in which proof is introduced is a matter in the discretion of the trial court. 1 Mechem on Agency (2d ed.), section 288; *Id.*, section 285, p. 208, note 81; *McIntyre* v. *Smith*, 108 Va. 736, 62 S. E. 930.

The evidence upon which the case depends will, in substance, appear from the following statement:

On the 11th day of July, 1916, J. G. Fitzhugh, who admittedly was, and had been for some years, representing the defendant as a salesman, and who seems to have had independent headquarters somewhere in the South rather than at the home office of the defendant in Kansas, called on the plaintiffs and made a written contract with them for the sale of three carloads of flour, the contract being in the words and figures following:

"Book
"S. W. Holt & Co.

"3 cars flour, White Eagle, cotton and wood five and fifteen hundredths. One car shipment last half July, the other two cars sixty days after guaranteed against decline bu. ninety-five cents. No. 2 Red Wheat K. C. The first is to be shipped forty-five days time, and if not satisfactory we are to take up the unused part and cancel the contract. All our flour is to be shipped thirty days open account.

"THE J. C. LYSLE MILLING CO.,
"Per J. G. F."

On the following day, according to testimony introduced by the defendant, Fitzhugh wired the substance of this contract from Richmond to the home office of the defendant, adding the words, "all subject to confirmation," and the defendant replied to Fitzhugh at Richmond by wire that day: "Market for red wheat dollar twelve to-day. Cannot accept order submitted less than six sixty basis crest;" and also wrote the southern office of The J. C. Lysle Milling Company, at Jackson, Miss., to the same effect. The defendant did not communicate at all with the plaintiff and it contends that there was no reason for doing so because the contract was subject to confirmation; but Fitzhugh did not testify and no explanation is offered for the established fact that he did not notify the plaintiffs that the contract had been rejected; nor is any reason assigned to explain why he should have wired the defendant that the sale was subject to confirmation, if, as contended by the defendant, he had no authority in any case to make a sale otherwise.

The plaintiffs believed the contract was complete and expected fulfilment of the same; and when the first consignment called for therein failed to arrive, they wrote defendant calling attention to the contract and urging prompt shipment. The defendant replied, stating, in substance, that it had never confirmed the contract and did not recognize it as valid and binding. In the meantime, there was a very substantial advance in the market price of flour; and this suit was brought to recover the difference between the contract price and the price on the market at the date fixed for delivery in the alleged contract.

During the negotiations between Fitzhugh and the plaintiffs, he stated that he was the southern sales agent of the defendant; that the contract required no confirmation; that the price he made was somewhat under the selling price of his flour, but he would make the sale at that price

in order to meet the price of a certain competitor and because he was anxious to get this particular flour on the market in Newport News. He had been trying to sell the defendant's flour to the plaintiffs for several years, and the defendant had previously sent samples thereof to the plaintiffs, but Fitzhugh had not theretofore succeeded in interesting them.

There was evidence tending to show that Fitzhugh had been using letter heads in his correspondence which the plaintiffs had seen and which showed that he was the southern representative of the defendant company. In this connection, one of the plaintiffs testified, on cross-examination, as follows:

"Q. Mr. Fitzhugh's business has been that of salesman for the J. C. Lysle Milling Company, has it not? A. He is their southern representative—I suppose he has salesmen under him. I don't know whether you call him a salesman or their head southern representative—that's the way I consider him—his letter shows him as their southern representative.

"Q. All you know is the information you have gotten from his letter heads and his conversations with you? A. Yes, no other information. I imagine his letter heads sometimes go to the Lysle Milling Company, and if not true they would not allow him to sail under false colors.

"Q. They set out he is then the southern sales manager of the J. C. Lysle Milling Company, and has other salesmen under him? A. Yes, he has charge of that part of it in addition to being a partner in the concern."

It further appeared that, about a year prior to the contract in question, Fitzhugh had made a sale of flour to J. W. Rowe & Company of Hampton, Va., without confirmation and substantially in the form of the contract here involved. The defendant not only recognized the sale, but paid for a somewhat extensive demonstration and advertisement of

the flour thus sold, all of which was arranged for and directed by Fitzhugh. In June, 1916, Fitzhugh made a second sale to Rowe & Co., and after a controversy had arisen in regard to it, the defendant wrote that firm a letter in which it was stated, among other things, "Whatever Mr. Fitzhugh agreed to do he will unquestionably do. At the time Mr. Fitzhugh booked you for the flour he sold it at twenty cents under our limits * * * As Mr. Fitzhugh talked this matter over with you thoroughly, we are going to send him your letter, and if there is anything due you, you will certainly get the benefit of the same."

The defendant contended and produced proof to show that Fitzhugh was merely a "drummer," or "commercial traveler," in the narrow sense of that term, with authority only to take orders subject to acceptance and confirmation. If this claim as to his agency could be regarded as a fact conclusively established, then the law of the case would be with the defendant. 6 Am. & Eng. Ency. L. (2d ed.) 224; *John Matthews Apparatus Co.* v. *Renz* (Ky.), 61 S. W. 9; *L. A. Becker Co.* v. *Alvey* (Ky.), 86 S. W. 974.

The primary inquiry, however, is whether Fitzhugh was in fact acting merely in the capacity of a drummer. Looking to the evidence as a whole, we think there was direct testimony tending materially to show that his agency carried with it the authority to make sales, and that, therefore, the court properly allowed the question of authority to go to the jury. This being true, it was proper also to admit, in corroboration, the declarations on that subject made by Fitzhugh in the course of the exercise of his alleged agency.

"While the declarations of an alleged agent are inadmissible to prove agency, if the agency be otherwise *prima facie* proved, they become admissible in corroboration." 31 Cyc. 1655, and cases cited in note 11. 1 Mechem on Agency (2d ed.), section 285, and note on page 209.

There is inherent difficulty in proving the scope of a traveling salesman's authority where it depends upon parol testimony, especially where the principal is a corporation and a non-resident; and the authorities are not exacting in the degree or amount of proof required of the party alleging the agency. Upon the whole case, we are of opinion that the jury was warranted in finding that Fitzhugh was acting in the scope of his apparent authority.

"It is impossible to lay down any inflexible rule by which it can be determined what evidence shall be sufficient to establish agency in any given case. That is a question which must be determined in view of the facts in each particular case. Whatever form of proof is relied upon, however, must have a tendency to prove agency, and must be sufficient in probative force to establish it by a preponderance of the evidence. It may be said in general terms, however, that whatever evidence has a tendency to prove the agency is admissible, even though it be not full and satisfactory, as it is the province of the jury to pass upon it. So if evidence has first been introduced tending to prove the agency, or to make out a *prima facie* case thereof, the admissions and declarations of the alleged agent, if otherwise competent, may then be shown, and the whole case be passed upon by the jury." 1 Mechem on Agency (2d ed.), section 299. See also *Id.* section 261 and note 7; *Id.*, section 296; *Henderson* v. *Mayhew*, 2 Gill. (Md.), 393, 41 Am. Dec. 434, 435; *Morrison* v. *Whiteside*, 17 Md. 452, 79 Am. Dec. 661, 664.

"While, as between principal and agent, the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third parties ignorant thereof; and as between the principal and agent and third persons, the mutual rights and liabilities are governed by the appar-

ent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no obligation to inquire into the agent's actual authority." 31 Cyc. 1333, and cases cited.

Several assignments of error relate to the action of the court in giving certain instructions on behalf of the plaintiffs, and in refusing certain others asked for by the defendant. The instructions as a whole are not certified. Counsel for defendant concede that this fact is fatal to the assignments based upon the refusal of instructions requested on behalf of the defendant, since the presumption is that the judgment of the lower court was right and that the instructions as a whole were correct. It is insisted, however, that this rule does not go far enough to cure an error where, as claimed in this case, it appears that an erroneous instruction has been given, because even if the court below did give a correct instruction upon the same subject, the two taken together would be contradictory, would tend materially to confuse the jury, and thus constitute reversible error. Whatever may be the merits of this contention as a general proposition, we deem it sufficient to say that in our opinion it cannot be availed of in the present case. The particular instruction complained of was susceptible of application to more than one feature of the evidence. The instruction itself, taken with another which was admittedly given, shows that the jury could not have been misled by it upon the decisive and only really controverted question of the agent's authority to make sales of flour without confirmation. The instructions as a whole, for aught we can

say, might have still further remedied the error complained of, if error it was. Before we could properly hold that the giving of an isolated instruction constituted reversible error, in a case where all the instructions are not certified, it would have to clearly appear that the instruction in itself was vitally wrong, and that other instructions could not have cured the error.

The judgment of the circuit court is affirmed.

*Affirmed.*