# $\mathfrak{Staunton}$

I. L. BUCHANAN v. FANNY A. WILSON AND ELIZABETH G. WILSON.

September 22, 1932.

Present, Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*H. Carter Redd,* for the plaintiff in error.

*J. L. Landram,* for the defendants in error.

BROWNING, J., delivered the opinion of the court.

I. L. Buchanan, by notice of motion for judgment, instituted suit against Fanny A. Wilson and Elizabeth G. Wilson claiming damages in the sum of $15,000.00 for alleged injuries sustained by him, by being struck by defendants' automobile truck, while it was being negligently operated or driven by their agent and employee, Raymond West, who was, at the time, engaged in their service, under their control and acting within the scope of his authority.

The defendants plead the general issue, filed their grounds of defense, their plea of contributory negligence and an affidavit under section 6126 of the Code of Virginia, by which they denied that they owned, operated or controlled, or had any interest in, the automobile truck or in its operation or that it was operated for them by Raymond West.

The case was called for trial on the 31st day of Decem-

ber, 1930, and the plaintiff rested, after eliciting the testimony of eight witnesses in his behalf. At this juncture the defendants moved the court to strike out the plaintiff's evidence on the ground that it did not connect them with the accident; that there was no evidence of negligence on the part of the driver, nor was there evidence that he was employed at the time by the defendants or was operating their truck, or engaged in their business. The court sustained the motion and directed a verdict for the defendants.

The case is before us upon three assignments of error. The first involves the action of the court in its ruling above set forth and the remaining assignments relate to questions of rejected testimony.

It was alleged in the notice of motion, and not controverted elsewhere, that the defendants were the joint owners of a farm in Hanover county, Virginia, known as "Rock Springs," which they occupied at the time of the accident, and which was devised to them by their mother whose will was probated in 1921. The facts show that upon this farm a poultry business has been conducted for some years. Sometime before the accident, it is not clear from the evidence just when, the active operator of this business was one George Wilson, a brother of the defendants, who then lived on this farm with his family. He was a civil engineer and it appears that he left to devote his time to his profession elsewhere, returning at infrequent intervals to his sometime home. The membership in the local poultrymen's association was originally in his name and so continued to be. The accident happened on the 13th day of November, 1929, at or near a place called Belmont. The plaintiff was struck by an automobile truck driven by West and severely injured. The evidence shows that the plaintiff was walking on the left side of the highway, which was the proper place to be, and that the truck was beyond the control of the driver, who admitted that the brakes were not in order and on that account he could not stop the truck, though he had ample time in which to do so.

Upon the question of the identity of West's employer and in whose service he was engaged at the time of the accident, we quote from the testimony as follows:

*Edward Cobb, Witness*

By Mr. Redd:

"Q. Where do you live?

"A. Elmont, Va.

"Q. What is your business?

"A. Merchant.

"Q. Do you cash checks and have you been cashing checks for Raymond West?

"A. Yes, sir.

"Q. Since November, 1929, or as far back as November, 1929?

"A. I wouldn't like to say that whether I have or not. I have cashed checks for him.

"Q. Who were those checks given by?

"A. Some given by Miss Fanny Wilson.

"Q. Do you know whether or not they send him down to your store after supplies and merchandise and things of that kind? Does he come after them?

"A. He comes in and buys things sometimes.

"Q. For the place they have?

"A. Yes, they have sent him down for them."

By the Court:

"Q. Where does West live?

"A. He lives with Miss Fanny Wilson.

"Q. In the home with her?

"A. He stayed there on the place. I reckon he is in the home.

"Q. What is his general occupation?

"A. The only time I see him is when he is driving the truck.

"Q. Is he a public worker?

"A. No, I don't think he works for anybody else.

"Q. Do you know whether he hauls for anyone?
"A. I have seen stuff in the truck.
"Q. What stuff?
"A. Feed. He comes to the store and gets feed from me in the truck."

By Mr. Redd:
"Q. Is he farming for himself?
"A. Not as I know of. I don't know.
"Q. Do you know whether or not he is working up there on this place that Miss Wilson owns?
"A. Well, I see him driving the truck and going back and forth to the store.
"Q. Is that the truck they have and use?
"A. Yes.
"Q. Their truck?
"A. Yes."

I. L. Buchanan, plaintiff, testified in part as follows:
"Q. Do you know what he (Raymond West) had in his truck at that time (accident)?
"A. Not exactly. He had feed of some sort.
"Q. You say he had bags of feed in his truck?
"A. Yes, sir."

T. L. Lancaster, secretary and treasurer of the local poultrymen's association, testified in part as follows:
"Q. Have you any official position in the poultrymen's association?
"A. Yes.
"Q. Will you tell what it is?
"A. Secretary and treasurer of the poultrymen's association.
"Q. As such do you buy and deliver the supplies of the association to the customers?
"A. I do.
"Q. Have you ever delivered any to Raymond West for Misses Wilsons?
"A. Yes, sir.

"Q. When paid for whose check paid for it?

"A. Their checks come signed Fanny A. Wilson, I think.

"Q. Have you ever received any checks signed George Wilson?

"A. Not for a year.

"Q. When Raymond came, what did he come and take that stuff back in?

"A. A runabout.

"Q. Automobile?

"A. Yes.

"Q. A sort of truck?

"A. Yes; automobile."

We give small heed to the fact that the membership in the poultrymen's association was still in the name of George Wilson. The secretary and treasurer testified that it was of little significance and explained that if a member should die and his sons continue in the business, the membership is not changed but remains as it was.

The evidence is quite clear that George Wilson had moved away with his family, one witness testifying that he had been away from the farm, he thought, for four years and the witness, Lancaster, testifying that he had been receiving checks from Miss Fanny Wilson for supplies for a year and a half and the merchandise was hauled away by Raymond West, in an automobile truck which looked like the one formerly used by George Wilson and his son.

We emphasize the above facts because the defendants contend that the evidence shows that George Wilson was the owner of the poultry business at the time of the accident, which contention, we think, is not sound. Again they assert that the truck involved in the accident was the property of George Wilson at one time and inferentially it was his property at the time of the accident. Even if this were so it would not be controlling. The question, other than that of negligence, which, of course, must be proven, is, was

Raymond West, at the time, the employee or agent of the defendants, and acting within the scope of his authority. As has been said the motion to strike out the plaintiff's evidence was sustained.

In the case of *Green* v. *Smith,* 153 Va. 675, 151 S. E. 282, 283, this court, through Justice Epes, said: "In considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason. *Dove Co.* v. *New River Coal Co.,* 150 Va. 796, 143 S. E. 317; *Limbaugh* v. *Commonwealth,* 149 Va. 393, 140 S. E. 133; *Goshen Furnace Corp.* v. *Tolley's Adm'r,* 134 Va. 404, 114 S. E. 728."

Considering the evidence in the case in judgment in the light of this statement of the law we think it should have gone to the jury and hence the court erred in sustaining the motion.

Judge Burks, in his work on Pleading and Practice (2nd ed.), p. 470, said: "If evidence is relevant to the issue, although entitled to but little weight, it is generally admissible, and a motion to reject when offered, or to strike it out after it has been received, is inapplicable. If relevant, but not deemed sufficient to maintain the issue joined, the opposing party should demur and not move to strike out. Such, at least, is the Virginia doctrine, which holds that a motion to strike out is not equivalent to a demurrer to the evidence."

The second assignment of error calls in question the action of the court in excluding the testimony of the witness, John Tignor, to the effect that one of the defendants, Elizabeth G. Wilson, told him that everything had been

turned over to Miss Fanny Wilson. This referred to the poultry business. It does not appear when this conversation occurred. Miss Fanny Wilson was not present at the time. It is true they were co-defendants and joint owners of the farm but we do not think it should have been received as evidence against the absent co-defendant.

It is said in Michie's Digest of Virginia and West Virginia Reports, Vol. 3, p. 486: "The admissions of one of the parties to the record whether as plaintiffs or defendants, are competent evidence against all other parties to the suit who have a joint interest in the matter of it, with the party making the admissions. *Walker* v. *Pierce,* 21 Gratt. [62 Va.] 722; *Gaines* v. *Alexander,* 7 Gratt. [48 Va.] 257; *Burton* v. *Scott,* 3 Rand. [24 Va.] 399."

There is no evidence that Elizabeth G. Wilson had any interest in the business which was being operated and which is an important element in the case.

"When the admissions of one person are offered in evidence against another on account of their joint interest in the subject, the joint interest must have subsisted at the time the admission was made." *Blakeney* v. *Ferguson,* 14 Ark. 641.

We are in the dark as to when the admission sought to be received in evidence was made. We think the court properly rejected the testimony of Tignor.

The third assignment of error relates to the ruling of the court in excluding the testimony of W. T. Jones, to the effect that about five minutes after the accident at Mr. Buchanan's house, which was about thirty yards from the place of the accident, he asked Raymond West: "Where do you live? He said, 'Up the road a mile or two.' I said, Who do you work for? He said, 'Miss Fanny Wilson.'"

Much was said in the briefs as to whether this statement is or is not a part of the *res gestae.* Regardless of this we think it was proper and admissible testimony as tending to establish the fact that West was the agent of Miss Fanny Wilson.

■■ In the case of *Lysle Milling Co.* v. *Holt & Co.,* 122 Va. 565, 95 S. E. 414, 416, the court quoted with approval from 1 Mechem on Agency (2nd ed.), section 299, as follows: "It is impossible to lay down any inflexible rule by which it can be determined what evidence shall be sufficient to establish agency in any given case. That is a question which must be determined in view of the facts in each particular case. Whatever form of proof is relied upon, however, must have a tendency to prove agency, and must be sufficient to establish it by a preponderance of the evidence. It may be said in general terms, however, that whatever evidence has a tendency to prove the agency is admissible, even though it be not full and satisfactory, as it is the province of the jury to pass upon it. So if evidence has just been introduced tending to prove the agency, or to make out a *prima facie* case thereof, the admissions and declarations of the alleged agent, if otherwise competent, may then be shown, and the whole case be passed upon by the jury."

In the case of *Bloxom* v. *Rose,* 151 Va. 590, 144 S. E. 642, 644, this court said, through Justice Chinn: "The second assignment of error relates to the admissibility of the evidence of Malcolm Bloxom's statement, to the effect that he was acting as agent for the defendant in renting the farm to Rose. As will be seen by reference to the quotation from *Lysle Milling Co.* v. *Holt & Co., supra,* in which case the same question was presented, it has long been well settled that when evidence has been introduced tending to prove the alleged agency, or to make out a *prima facie* case thereof, the declarations of the alleged agent then become admissible in corroboration; and the order in which such proof is introduced is within the discretion of the trial court. *McIntyre* v. *Smith, supra* [108 Va. 736, 62 S. E. 930]. Aside from any other evidence, the mere fact that the defendant placed his farm under the exclusive management and control of his father when he left the country was of itself sufficient to create the presumption that Mal-

colm Bloxom was acting as defendant's agent in the management and operation of said farm; certainly with respect to third persons who had no knowledge of facts calculated to put them on notice to the contrary."

In the case of *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414, 419, Justice Holt said for the court: "Agency may be proved in many ways, among them by the testimony of the agent himself, and when from extrinsic sources a *prima facie* case is made out, the agent's own declarations and admissions become competent. Frequently it is established and has, of necessity, to be established by circumstantial evidence."

We think the court erred in excluding this testimony.

It follows that we reverse the judgment of the trial court and remand the case for a new trial to be had not in conflict with the views herein.

*Reversed and remanded.*