# CIRCUIT COURT THE CITY OF PORTSMOUTH

Yvonne Thrift Fink,
Executor
of the Estate of
Margaret Thrift,
deceased

v.

Colonial Home, L.L.C.,
and Paula Taylor

September 16, 2010

Case No. (Civil) 740CL10001478-00

BY JUDGE DEAN W. SWORD, JR.

This matter is before the court upon the motion of the defendants seeking to compel arbitration. For the reasons stated hereafter, the motion is granted.

*Facts*

The relevant facts establish that the plaintiff's decedent found it necessary to obtain care at Colonial Manor, L.L.C., and pursuant to a "Resident Agreement" dated April 25, 2008, she moved to that facility. A copy of the agreement is filed as Exhibit B with the defense motion. *Inter alia*, the agreement provides:

> 16. Parties to this agreement shall settle any and all disputes concerning this agreement or care of Resident at binding arbitration, at each party's expense, vice litigation.

The document was signed by a representative of the defendant and by "Yvonne T. Fink" on behalf of Margaret Thrift, the plaintiff's decedent.

While the agreement does not reflect an agency relationship between Margaret and Yvonne, a copy of the power of attorney was delivered to the defendant and is Exhibit A with this motion.

This power of attorney is of a general form which authorized the agent, Yvonne G. Thrift, "to sign any . . . contract or other paper . . . and to do all such other acts, matters, and things in relation to . . . my estate, affairs, or business of any kind or description . . . as I myself might or could do if acting personally." The power of attorney also provides that it shall survive "disability, incompetence, or incapacity."

Thus we come to the several issues that must be decided:

(1) Does the failure of the resident agreement to reflect that it was executed by Yvonne T. Fink (nee Thrift) in her capacity as attorney in fact for Margaret Thrift make the agreement a nullity?

(2) If the agreement is a valid binding agreement, is paragraph 16 vague and uncertain to make it unenforceable?

(3) If the agreement should be enforced in its entirety, what other reason might there be to deny the motion?

## Question One

A plain reading of the agreement reflects the services to be provided by the defendant, Colonial Home, L.L.C., are for Margaret Thrift, who is described as the resident.

The contract is executed by Yvonne T. Fink without the customary designation of agency, e.g. POA, attorney-in-fact, power of attorney. It requires no extensive legal research to come to the conclusion that such an indication of agency is wise. However we must ask the more difficult question, is this required by law?

Perhaps the first place to look is Virginia Code §§ 11-1 and 11-2, generally known as the statute of frauds. Clearly the statute requires a written contract "signed by the party to be charged or his agent." Just as clearly, we have a written contract signed by someone attempting to act as an agent.

The question then becomes what proof is required to establish agency if the applicable statute of frauds does not impose (and it does not) a writing requirement. Interestingly enough several Virginia cases have addressed how agency may be proven.

*Accordia Ins. v. Glenito Glenn, L.P.*, 263 Va. 377, 560 S.E.2d 246 (2002), was a dispute over insurance coverage and whether or not an agency relationship existed. The Supreme Court citing two earlier cases (discussed below) opined, "agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances." *Accordia Ins.*, at page 384.

The first of the two prior cases mentioned above is *Drake v. Livesay*, 231 Va. 117, 341 S.E.2d 186 (1986). This matter involved the authority

of a husband to enter into a contract to sell real estate owned as tenants by the entireties with his wife. Once again, the court found "[u]nless the existence of an agency relationship depends on unambiguous documents, or undisputed facts, the question of agency vel non is one of fact for the jury. Agency may be inferred from the conduct of the parties and from the surrounding facts and circumstances." *Drake*, at page 121 (citations omitted).

The last case cited by both of the above matters is *Royal Indemnity Co. v. Hook*, 155 Va. 956, 157 S.E. 414 (1931). Another dispute over insurance coverage, this court also held "[a]gency may be proven in many ways, among them by the testimony of the agent himself, and when from extrinsic sources a prima facie case is made out, the agent's own declarations and admissions become competent. Frequently, it is established and has, of necessity, to be established by circumstantial evidence. *Lysle Milling Co. v. Holt & Co.*, 122 Va. 565, 95 S.E. 414." *Royal Indemnity Co.*, at page 970 (1918).

The *Lysle, supra,* case is also instructive in our matter. This was a dispute over the authority of a traveling salesman to bind his employer. The court opined, "as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority. . . . The apparent authority, so far as third persons are concerned, is the real authority, and . . . he is under no obligation to inquire into the agent's actual authority." *Lysle*, at pages 571-72.

In its brief, the plaintiff makes what the court considers an unconvincing argument that Fink signed the resident agreement in her own capacity. A reading of the document's opening paragraph identifies the party to receive services as "Margaret Thrift." If the agreement was for the benefit of Fink it makes no sense to place Thrift's name on it. Furthermore, the allegations of the complaint are based upon a resident/service provider relationship that does not include Fink.

When this is coupled with a valid written power of attorney apparently delivered to the defendant at the time of the execution of the agreement, the court finds satisfactory proof of the agency.

Applying the rule consistently followed by the above cited four cases decided over a period beginning with *Lysle* in 1918 and concluding with *Accordia* in 2002, it is also clear that agency may be proven in a variety of ways. As I previously observed, it would be a better practice to carefully delineate one's function when signing as an agent, but there appears to be no rule that makes agency dependent on such a technical procedure.

*Question Two*

Having determined the existence of a valid binding agreement duly executed by Fink as agent for Thrift, we still must determine whether the terms of paragraph 16 make arbitration unenforceable.

The Virginia General Assembly has established both a policy favoring arbitration and a statutory procedure to supervise the process. Title 8.01, Chapter 21, Code of Virginia.

Virginia Code § 8.01-581.01 provides "A written agreement to submit an existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable. . . ."

If the issue of arbitration is raised, "the court shall proceed summarily to the determination of the issue of the existence of an agreement. . . ." Virginia Code § 8.01-581.02(A).

Virginia Code § 8.01-581.02 further provides:

> If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.
> The power of the arbitrators may be exercised by a majority, unless otherwise provided by the agreement or by this article.

The remainder of Chapter 21 spells out the various procedures to be followed during the arbitration.

After considering the terms of § 8.01-581.03, it is obvious to the court that it is required to select arbitrators since the agreement fails to do so. Thus the failure of paragraph 16 to nominate arbitrators does not invalidate the agreement.

### Question Three

The court is satisfied there is a valid, binding written agreement to arbitrate the cause of action before the court. There appear to be no other issues that would invalidate the arbitration provision, and so the motion is granted.

Since the court must appoint arbitrators, it will be happy to consider nominees from the parties. If the parties are unable to agree, the court will make its own selection.

Unless I have heard from the parties within thirty days from the date hereof, I will assume that the parties are unable to agree and will proceed accordingly.