Syllabus.

# Richmond.

## W. H. HARRISON V. THE PROVIDENT RELIEF ASSOCIA-TION OF WASHINGTON, D. C.

### February 26, 1925.

1. LIFE INSURANCE—*Conspiracy and Concealment by the Beneficiary and by the Insured—Insured a Convict—Case at Bar.*—In the instant case the insured was a life convict and the company charged conspiracy and concealment by the beneficiary and by the insured. Insured's conviction was known in every detail to the company's agents from the beginning. The facts were not suppressed, and there was no suggestion to the company's agents that they be suppressed. The insured did not sign the application, and the company was told that he did not; it was signed by the company's agent, who was never at the jail where insured was confined at all, and the necessary inference was that the agent prepared the application *in toto*. The agent also selected the medical examiner who had no interest as his fee was not contingent upon the acceptance of the risk. Not only the agent who wrote the insurance knew the facts, but the agent who succeeded him must also have known them; yet without protest premiums were collected.

   *Held:* That no conspiracy was proven.

2. LIFE INSURANCE—*Misstatements of Agents—Validity of Policy.*—Misstatements of agents written by them into an application for insurance for which neither the beneficiary nor the insured is responsible, do not make the policy void.

3. INSURANCE—*Agency—Knowledge of Agent as Knowledge of Company—Medical Examiners.*—Any knowledge which the agent of an insurance company may have is imputed to the company, and medical examiners for insurance companies are considered as agents for the company, and the company is bound by any information its medical examiner may have at the time he fills out the application for the insured.

4. INSURANCE—*Agency—Knowledge of Agent as Knowledge of Company.*—Policies usually contain many conditions and restrictions inserted for the purpose of relieving the insurer from liability for all acts done by, and all notices given to, and all knowledge acquired by, their agents. Nevertheless, irrespective of the stipulations contained in a policy, if it can be said that in doing any act one was in fact the agent of the insurer and acting as such, his principal, though without the actual

knowledge possessed by the agent, must be deemed to have acted with such knowledge, and held to be bound or estopped to the same extent as if the agent had actually imparted to his principal knowledge of all the material facts known to him when acting for his principal.

5. LIFE INSURANCE—*Misstatements and Concealment of Agents—Insured a Convict—Residence—Case at Bar.*—In the instant case application for life insurance was prepared and signed by the company's agent. Insured did not sign it. The application stated that insured was a laborer when he was in fact a convict, that he resided on a certain street whereas his sentence of confinement removed him permanently from that street.

*Held:* That neither misstatements nor concealment on the part of the company's agent could affect the plaintiff, the beneficiary, unless he was in some wise responsible therefor, and the evidence failed to show such responsibility.

6. INSURANCE—*Construction of Policies—Construed Most Strongly Against the Insurance Company.*—The maxim, that the words of an instrument shall be taken most strongly against the party employing them, is peculiarly appropriate in the construction of a policy of insurance. The instrument is wholly the work of the underwriter, and is usually filled with a multitude and variety of stipulations seldom read by the assured when he accepts the policy, and, if read, rarely if ever understood, abounding in forfeitures and in provisions generally harsh and difficult of performance, it should be strictly construed against the insurer, and liberally in favor of the insured.

7. LIFE INSURANCE—*Incontestable Policies—Incontestable a Reasonable Period after Issue—Validity.*—Policies incontestable from date of issue are sometimes said to be against public policy, but this rule has no application, if, instead of declaring the policy incontestable from the date of issue, a reasonable period is provided for, after which contest cannot be made.

8. LIFE INSURANCE—*Incontestable Policy—Construction.*—It is agreed that as a rule the contract including the incontestable clauses should be liberally construed in favor of the assured and against the party who prepared the contract; that is against the assurer.

9. LIFE INSURANCE—*Policy—Incontestable Clause for Benefit of Beneficiary.*—While the contract is with the insured and not with the beneficiary, nevertheless, it is for the use of the beneficiary and there is no reason to say that the incontestable clause is not meant for his benefit as well as for the benefit of the insured.

10. LIFE INSURANCE—*Incontestable Policy—Fraudulent Statements—Expiration of Two Years—Expressio Unius Est.*—A life insurance policy provided that, if within two years from the date thereof, the falsity of any statement made by the insured be discovered by the company, upon notice to the insured or beneficiary, the policy should be void.

By the application of the maxim, *expressio unius est exclusio alterius,* it follows that, if there are fraudulent statements contained in the application, they can not be set up after two years from the date of the policy.

11. Life Insurance—*Fraudulently Securing a Policy—Cancellation of Policy—Acts of 1906, Chapter 112, Subchapter 2, Section 50—Convicts—Case at Bar.*—Under Acts of 1906, chapter 112, subchapter 2, section 50, providing for the invalidity of policies and renewals secured by fraud, before a policy can be cancelled, there must be conviction of those who secured it, and it must appear that the insured was "not in an insurable condition." That is to say, this must appear beyond a reasonable doubt. The mere fact that a man is a convicted felon does not as a matter of law make him uninsurable. In this case there was evidence that this was not true as a matter of fact, and the jury so found.

12. Life Insurance—*Policy on Convict's Life—Public Policy—Code of 1919, Section 4228.*—In view of section 4228 of the Code of 1919, in regard to incontestable policies, which section, in sympathy with the current of general law, declares that contests shall no longer be tolerated after a reasonable time for full investigation has passed without protest, it is not against public policy to permit a recovery upon a policy on the life of a life convict.

13. Life Insurance—*Incontestable Policies—Section 4228 of the Code of 1919.*—Section 4228 of the Code of 1919 and kindred laws are wise statutes of limitation. Insurance companies should not be permitted with shut eyes to receive in silence the profits of their contracts, and to grow articulate only when called upon to pay. The authorities are full handed to show that such provisions are valid when a reasonable time is given the company in which to make inquiry, and are liberally construed in favor of the assured. This is not only good law, but it is good sense. Men should not be compelled to will law suits to the objects of their bounty, and a charge of fraud can best be answered by one who is alive to testify.

14. Appeal and Error—*Error in Instructions—Complaint by Prevailing Party.*—Where plaintiff obtains a verdict in his favor it is not necessary to consider on appeal plaintiff's assignment of error dealing with instructions.

15. Appeal and Error—*New Trial—Verdict Against the Evidence—Reversal of Judgment Setting Aside Verdict.*—A verdict must stand unless it is contrary to the evidence or without evidence to support it; neither status obtains in the instant case, and notwithstanding the weight to which the judgment of the lower court is entitled, a judgment of the lower court setting aside the jury's verdict must be reversed where the issue was fairly presented to the jury and the verdict was not contrary to or without any evidence to support it.

Error to a judgment of the Corporation Court of the city of Danville, in an action of assumpsit.    Judgment for defendant.    Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Harris & Harvey*, for the plaintiff in error.

*Withers & Brown*, and *S. L. Kelly*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

On March 14, 1916, Allen E. Harrison was tried for murder and convicted in the Corporation Court of Danville.    This conviction was confirmed by that court on March 18th.    He was sentenced to confinement for life in the State penitentiary and was removed to that prison on March 27th.    Some time afterwards, he was taken to the State farm at Lassiter, Virginia, where he died of tuberculosis on May 31, 1922.

After his conviction, and while he was still in the Danville jail, his father, the plaintiff here, informed an agent of the defendant company of his desire to take out a policy of insurance on the life of his son.    Formal application therefor bearing date April 24th, purporting to be signed by "Allen E. Harrison, applicant," was duly made.    (This date was a manifest error.    It was made in March.)    He was examined in jail on March 26th by Dr. S. R. Wilson, a medical examiner selected by the defendant.    Thereupon this application was approved by the company's agent, his report being: "The risk is fare." All of the papers were forwarded to the home office and in due season the policy sued on, bearing date April 24,

1916, issued.   Premiums were paid to the date of the death of the insured.

The defendant maintained its home office at Washington, D. C., and had established a branch in Danville in charge of G. W. Woody, assistant cashier.

His duty was to secure applications, have physical examinations made by a medical inspector, and to forward papers, together with his recommendations, to the home office for final action.

Said application is as follows:

"April 24, 1916.                          731031

"APPLICATION TO THE PROVIDENT RELIEF ASSOCIATION.

"Full name of life proposed for insurance: Allen E. Harrison.

"White or colored?   M. or S.   Male or female?

"Residence No.   Almagro street.

"City, Danville.   State, Virginia.

"Occupation of life proposed?   Laborer.

"Born February, 1894.   Where?   Virginia.

"Age nearest birthday.   Twenty-two years.

"Premium per week, twenty-five cents.   Insurance $350.00.

"If now insured in this association, give numbers of certificates.

"If in other companies, give names and amounts.

"Is said applicant now in sound health?   Yes.

"Has applicant any physical defect or infirmity of any kind?

"Has said applicant ever been declined or postponed by this or any other company or society for insurance or benefits?   No.

"Beneficiary, subject to provisions of certificate applied for:   W. H. Harrison.

"Relationship—father.   Age, fifty-five years.

"I hereby apply for a certificate of insurance in The Provident Relief Association, of Washington, D. C., and agree to make any and all payments that may be due by me under this contract, or failing to do so to relinquish all claims for benefits, and agree that this application and the certificates that shall issue from it shall form the contract between the association and myself. I hereby warrant the truthfulness of the answers to the above questions, and that I have not withheld any facts as to my age, health, habits or history that might mislead the agent or association.

"I have this 25th day of March, 1916, personally seen and examined the applicant proposed for insurance and saw the signature made on this form, and am of the opinion that applicant is in sound health; I therefore recommend applicant to be accepted.

"G. W. WOODY, Agent."

The medical examiner's report is:

"1. Does the date of birth given to you agree with that given to agent?   Yes.

"2. What do you believe to be the age next birthday? Twenty-two.

"3. Race (colored)?

"4. Height and weight?   (If over fifteen years of age.)   Four feet, six inches, 125 pounds.

"5. Does the applicant appear to be in good health? Yes.

"6. Is there any physical defect or infirmity?   No.

"7. Has the applicant ever been rejected by this or any other company?   No.

"8. Has either parent or any brother or sister died of consumption?   No.

"9. Does the applicant reside with any person suffering from consumption?   Relationship?   No.

"10. Are the home surroundings sanitary? Yes.

"11. Is the heart normal? If not, state particulars. Yes.

"12. Are the lungs normal? If not, state particulars. Yes.

"13. Have you reason to suspect intemperate habits, or, if female, immoral life? No.

"14. Has applicant within the past five years had any serious illness or injury; spitting blood, habitual cough, syphilis? If so, state particulars. No.

"15. Do you detect disease of any kind? No.

"16. Where did you personally examine the applicant? Patton street.

"17. When? Day. Month. Year. 26th March, 1916.

"18. Is the life, in your opinion, a first class, fair, average, or poor risk? First class.

"19. Is applicant free from swelling of hands, feet, or eyelids? Yes.

"Remarks: Use this space for full particulars, if required.

"Signature of party examined, or, if too young to write, of the person who is applying for child's insurance. Allen E. Harrison.

"Signature of medical examiner, I certify that my answers to the above questions are true and that the applicant signed in my presence, S. R. Wilson, M. D."

This is the inspector's report:

"A. What do you believe to be the age next birthday? Twenty-two.

"B. Is there reason to suspect intemperate habits, or, if female, immoral life? No.

"C. Are the home surroundings sanitary? Yes.

"D. Race (colored)?

"E. Has applicant ever been rejected? No.

"F. Did applicant sign this application on other side? No.

"G. Where did you personally see applicant? Patton street.

"H. When? Day. Month. Year. 26-3-16.

"I. Does applicant appear to be in good health? Yes.

"Remarks.

"Recommendation: The risk is fare.

"Signature of party inspected, or if too young to write, of person applying for child's insurance. Allen E. Harrison.

"I certify that my answer to the above questions are true and that applicant signed in my presence.

"G. W. WOODY,
"Title Supt."

This is the full written record as it preceded the policy in judgment.

Payment was refused. This action was instituted, the declaration duly filed, as were the grounds of defence relied upon, the cause was submitted to a jury, and a verdict for the plaintiff returned, which was, on motion of the defendant, set aside as being contrary to the law and the evidence, and a final judgment for the defendant entered, to which exception was duly taken.

In the "grounds of defense" it is said that "Allen E. Harrison, with the connivance and at the request and solicitation of the plaintiff, W. H. Harrison, falsely and fraudulently stated that he, the said Allen E. Harrison, resided on Almagro street, in the city of Danville, and that he was by occupation a laborer, thereby intending to mislead said defendant and withhold from it the fact of his confinement in jail and sentence to the penitentiary for life," and that "the said Allen E. Harrison and the plaintiff, W. H. Harrison, colluded with G. W.

Woody, the soliciting agent of the defendant, and S. R. Wilson, the medical examiner, and procured and induced said agents to fraudulently represent to the defendant that the said Allen E. Harrison was a normal risk for life insurance; that his weight was 125 pounds, when in fact his weight was only 106 pounds; and also colluded with and induced said agent and medical examiner to falsely represent to defendant that said Allen E. Harrison was a resident of Almagro street, Danville, Virginia, and that his occupation was that of a laborer; and to conceal from said defendant company the fact that said Allen E. Harrison was at the time of said application confined in the jail in Danville under sentence of life imprisonment in the penitentiary."

For reasons which will presently appear, it is only necessary to consider that assignment of error which deals with the act of the court in setting aside the verdict of the jury and in entering final judgment.

[1] We will first take up the charge of conspiracy and concealment by the beneficiary and by the insured. The answer to this is that there is nowhere any evidence to sustain these charges. The son's conviction and incarceration was known in every detail to the company's agents from the beginning. Facts were not suppressed and there was no suggestion to the company's agents that they be suppressed. The insured did not sign the application and the company was told that he did not. It was signed by Woody who was never at the jail at all and the necessary inference is that he prepared it *in toto.* He also selected the medical examiner. This physician had no interest in the results of his work. His fee was not contingent upon the acceptance of the risk.

That these statements do show that this man was a laborer when he was in fact a convict is not in dispute, and so also is the fact that he was not at that time a resi-

dent on Almagro street, but was under sentence which removed him permanently from his home there. As to his height there was conflict of evidence. The examining physician does not appear to have taken his weight at all, but to have estimated it from information antedating the examination by two or three months. For this report and for the information it purported to give the insured was in nowise responsible. Not only did the agent who wrote this insurance know the facts but the agent who succeeded him must also have known them, yet without protest premiums were collected for years.

[2] With conspiracy eliminated, the problem is: Do misstatements of agents written by them into the application, for which neither the beneficiary nor the insured is responsible, make the policy void?

[3] In *South Atlantic Ins. Co.* v. *Hurt*, 115 Va. 398, 79 S. E. 401, the court said: "It is a well settled principle that any knowledge which the agent of an insurance company may have is imputed to the company, and that medical examiners for insurance companies are considered as agents for the company and the company is bound by any information its medical examiner may have at the time he fills out the application for the insured." And again, "hence, though a medical examiner omits an answer made by the applicant, or writes it out substantially different from the response actually given by him, and the insurer acts only on the answers so written, still, as in law the medical examiner is the agent of the insurer and not of the insured, the former cannot escape liability on account of the failure of its medical examiner to perform his duty, nor even on account of his intentional misperformance of it. He is the agent of the insurer, and to it his knowledge is imputed, and if it issues its policy, it must be deemed to have done so

Harrison *v.* Prov. Relief Ass'n, 141 Va. 659. 669

Opinion.

after its agents had communicated to it all the facts made known to him, and it is estopped from contending to the contrary."

In *Pfiester* v. *Missouri State Life Ins. Co.*, 85 Kan. 97, 116 Pac. 245, the court said: "It is well settled that where the agent of an insurance company who fills out an application for insurance is duly informed as to the fact and fails to state them in the application, the actual knowledge of the agent will be held to be the knowledge of the company."

"It has been held in this State that notice to the agent is binding upon the company, though not communicated to it." *Home Insurance Co.* v. *Strange*, 70 Ind. App. 49, 123 N. E. 127.

"The authority of a soliciting agent of an insurance company to take applications for insurance carries with it the legal implication of an authority to fill up the application, and to do all things needful in perfecting it." Joyce on Insurance (2nd ed.), section 425. See also *Newburyport* v. *Fidelity Life Insurance Co.*, 197 Mass. 596, 85 N. E. 111; *Perry* v. *Jno. Hancock Life Insurance Co.*, 147 Mich. 645, 111 N. W. 195; *Fire Insurance Co.* v. *Ward*, 95 Va. 231, 28 S. E. 209; *Insurance Company* v. *Wilkinson*, 13 Wall. 234, 20 L. Ed. 617; 32 Corpus Juris, 1069.

[4] The rule is well stated in a note to *Johnson* v. *Aetna Ins. Co.*, 107 Am. St. Rep. 92, where it is said: "The general rule of law imputing to a principal notice given to or possessed by his agent applies to insurers not less than to other principals. While principals in this business have taken greater pains than those in any other to exempt themselves from the operation of this rule, they have been generally, if not universally, unsuccessful. Policies usually contain many conditions and restrictions inserted for the purpose of relieving the

insurer from liability for all acts done by, and all notices given to, and all knowledge acquired by, their agents. Nevertheless, irrespective of the stipulations contained in a policy, if it can be said that in doing any act, one was in fact the agent of the insurer and acting as such, his principal, though without the actual knowledge possessed by the agent, must be deemed to have acted with such knowledge, and held to be bound or estopped to the same extent as if the agent had actually imparted to his principal knowledge of all the material facts known to him when acting for his principal." See also *Norfolk Fire Ins. Co.* v. *Wood*, 113 Va. 310, 74 S. E. 186, 39 L. R. A. (N. S.) 1020; *National Union Fire Ins. Co.* v. *Burkholder*, 116 Va. 942, 83 S. E. 404. While Joyce on Insurance, at section 425, says: "And the tendency of the courts at the present day is towards a liberal rather than a strict construction of an agent's power."

[5] In the light of this law we have no difficulty in reaching the conclusion that neither misstatements nor concealments on the part of this company's agents could affect the plaintiff unless he was in somewise responsible therefor and that the evidence fails to show such responsibility.

The situation is readily understandable. This father, prior to the conviction of the son, had carried a sick benefit policy on his son's health. He says that after the conviction he assumed that the State and not himself would have to care for him in event of illness, and so for that reason the first policy was permitted to lapse and the one in judgment taken out.

Nor would the result be different if we could impute to the plaintiff the fraud set up.

In the policy it was provided: "If the death of the insured be caused by his or her own hand, whether sane or

insane, or from the result of any violation of the laws of the, land or through venereal disease, or while in active military service, the liability of the association is limited to a return of the premiums paid upon this policy; and, if within two years from the date hereof, whether the insured die or not, the falsity of any statement made by the insured in the application herefor be discovered by the association and notice thereof be given to the insured or the beneficiary, this policy shall be void and the association shall pay to the insured, if living, or to the beneficiary, if the insured be dead, all premiums paid upon this policy; and upon such payments, or tender, the association shall be relieved of all further liability hereunder."

[6] In *Stratton* v. *New York Life Ins. Co.*, 115 Va. 257, 78 S. E. 636, the court, quoting with approval from *Georgia Home Insurance Co.* v. *Kinnier*, 28 Gratt. (69 Va.) 105, said: "The maxim that 'the words of an instrument shall be taken most strongly against the party employing them,' is peculiarly appropriate in the construction of a policy of insurance, and especially of such conditions as we are now considering. The instrument is wholly the work of the underwriter, and is usually filled with a multitude and variety of stipulations, seldom read by the assured when he accepts the policy, and, if read, rarely if ever understood, abounding in forfeitures and in provisions generally harsh and difficult of performance, it should be strictly construed against the insurer, and liberally in favor of the insured."

[7] Policies incontestable from date of issue are sometime said to be against public policy, and the *proviso* against contests is disregarded. *Reagon* v. *Union Mutual Life Ins. Co.*, 189 Mass. 555, 76 N. E. 217, 2 L. R. A. (N. S.) 821, 109 Am. St. Rep. 659, 4 Ann. Cas. 362. But in this same case it is held that this rule has no ap-

plication if, instead of declaring the policy incontestable from the date of issue, a reasonable period is provided for, after which contest cannot be made; that is to say, it is entirely reasonable for an insurance company to say: "We will take two years within which to look into your application and the statements therein contained, and during this time for good and sufficient reasons we reserve the right to cancel, but after then this right shall be forever closed." . This is a reasonable contract. It enables the company to protect itself from fraud, and it says to the insured: "After you are dead charges shall not be made that might have been answered in the flesh."

With reasonable opportunity for examination there is little difference of opinion as to the validity of such policy provisions.

In *Dibble* v. *Reliance Life Ins. Co., of Pittsburgh*, 170 Cal. 199, 140 Pac. 171, Ann. Cas. 1917-E, 34, the court said:

"The decisions in other States are practically unanimous in holding that a provision in a life insurance policy, to the effect that, after being in force the specific time, it shall be incontestable, precludes any defense after the stipulated period on account of false statements warranted to be true, even though such statements were fraudulently made, unless by the terms of the policy fraud is expressly or impliedly excepted from the operation of such provisions."    See also *Flanigan* v. *Federal Life Ins. Co.*, 231 Ill. 399, 83 N. E. 178; *Indiana Life Ins. Co.* v. *McGinnis*, 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192; *Drewe* v. *Metropolitan Life Ins. Co.*, 79 N. J. Law, 398, 75 Atl. 167; *Wright* v. *Mutual Benefit Life Ins. Co.*, 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749.

[8] There is an extended discussion of this subject in

Joyce on Insurance (2nd ed.), section 3733-a-d. It is there said:

"It is also agreed that as a rule the contract including these incontestable clauses should be liberally construed in favor of the assured and against the party who prepared the contract; that is against the assurer."

[9] One of the latest cases on this subject is *Mutual Life Insurance Co.* v. *Hurni Packing Company*, 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. There the defense was made that the contract was with the insured and not with the beneficiary. The court said:

"It is true, as counsel for petitioner contends, that the contract is with the insured and not with the beneficiary; but nevertheless it is for the use of the beneficiary and there is no reason to say that the incontestability clause is not meant for his benefit as well as for the benefit of the insured." See also *Missouri Life Ins. Co.* v. *Cranford*, 161 Ark. 602, 257 S. W. 66, 31 A. L. R. 93; *Humpston* v. *State Mutual Life Ins. Co.*, 148 Tenn. 439, 256 S. W. 438, 31 A. L. R. 78, and *Lavelle* v. *Metropolitan Life Ins. Co.*, 209 Mo. App. 330, 238 S. W. 504.

[10] It follows that if there are fraudulent statements contained in the application, they cannot be set up after two years from the date of the policy, and this under the terms therein written. *Expressio unius est exclusio alterius.*

[11] It is also said that there can be no recovery because of the express provisions of section 50 of an act concerning the Bureau of Insurance, approved March 9, 1906. It is as follows:

"50. Any agent, physician or other person who shall knowingly secure or cause to be secured a policy of life insurance on any person without his knowledge or consent, or by means of misrepresentations, false, fraudu-

lent, or untrue statements be instrumental in securing a policy of life insurance on any person, not in an insurable condition, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than one hundred dollars nor more than one thousand dollars, or be imprisoned in a county jail not less than thirty days nor more than one year, or both, in the discretion of the court; and said certificate or renewal so secured shall be absolutely void." Acts 1906, chapter 112, subchapter 2, section 50.

Before a policy can be cancelled under that statute there must be conviction of those who secured it, and it must appear that the insured was "not in an insurable condition." That is to say, this must appear beyond a reasonable doubt. The mere fact that a man is a convicted felon does not as a matter of law make him uninsurable. In this case there was evidence that this was not true as a matter of fact, and the jury so found.

[12] And, finally, it is said that to permit a recovery in this case would be against public policy. If this were ever true, it is not now; our statute, section 4228 of the Code, in sympathy with the current of general law, declares that such contests shall no longer be tolerated after a reasonable time for full investigation has passed without protest.

[13] This and kindred laws are wise statutes of limitation. Insurance companies should not be permitted with shut eyes to receive in silence the profits of their contracts and to grow articulate only when called upon to pay. The authorities are full handed to show that such provisions are valid when a reasonable time is given the company in which to make inquiry, and are liberally construed in favor of the assured. This is not only good law, but it is good sense. Men should not be compelled to will law suits to the objects of their bounty,

and a charge of fraud can best be answered by one who is alive to testify.

From this it follows that our conclusions are:

1. No conspiracy has been proven.

2. All misstatements made and all fact suppressed can be charged against the company's agents only.

3. Fraud as a defense cannot be set up after two years from the date of the policy.

4. The act of 1906 has no application to the facts in this case.

[14] No exceptions were noted by the defendant during the progress of the trial. It is not necessary to consider plaintiff's assignments of error dealing with instructions. All that he could hope for at the hands of the jury was a verdict in his favor and that he received. *Fox* v. *Mason*, 139 Va. 667, 124 S. E. 405.

[15] Conditions under which a verdict can be set aside by the trial court have been so often and satisfactorily stated that we will content ourselves with citing *Davis* v. *McCall*, 133 Va. 487, 113 S. E. 835; *N. & W. Ry. Co.* v. *Thayer*, 137 Va. 294, 119 S. E. 107. The verdict must stand unless it is contrary to the evidence or without evidence to support it; neither status obtains here. After setting aside the verdict the court below entered final judgment for the defendant under authority of section 6251 of the Code. The judgment of the learned judge who saw and heard the witnesses is entitled to due consideration on appeal, but in our opinion the issues presented were fairly for the jury. Giving proper weight to what was said by Judge Burks in *Ricketts* v. *J. G. McCrory Co.*, 138 Va. 548, 121 S. E. 917, we reach the conclusion that it was error to set aside the jury's verdict and that this court should now give judgment for the amount there stated. And it is so ordered.

*Reversed.*