# Wytheville.

## HOME BENEFICIAL ASSOCIATION v. EVA CLARK.

June 13, 1929.

The opinion states the case.

*Wyndham R. Meredith* and *John H. Bowen*, for the plaintiff in error.

*Harry L. Nachman*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a motion, brought under section 6046 of the Code of 1919, to recover on a life insurance policy, that is to say, it is an ordinary fifteen day motion. In due course, there was a verdict and judgment for the plaintiff, which we are asked to review.

On August 14, 1919, the Home Beneficial Association issued to Blanche Matthews, of Hampton, a policy on her life in the sum of $500.00, for the benefit of a sister, Eva Clark. It is a straight policy and carries no sick benefit, no loan or reserve values, no surplus or dividends, and has no cash surrender value of any

kind, nor had excess premiums been paid. It is of that class known as industrial insurance, with premiums payable weekly. Blanche Matthews died on January 11th or 12th, 1927. The time limit within which payment of an unpaid premium could have been made expired on the preceding day, January 10th, so that on the day of her death, a weekly premium was overdue and unpaid.

■ A demurrer to the motion was interposed and overruled. As ground therefor it is said that no copy of the policy was filed with the motions, as provided for in section 6094 of the Code of 1919.

This statute was originally enacted in 1872, Acts 1871-72, page 57. It is entitled: "An act to simplify declarations in actions against insurance companies." The necessity therefor is stated in the act itself:

"Whereas, complaints have from time to time been made by members of the legal profession and the holders of policies of fire, marine, and life insurance, that by reason of the almost numberless conditions and provisoes contained in the policies of most if not all of the insurance companies doing business in this Commonwealth, and the great difficulty and vexation experienced in declaring upon said policies, the expense of suits thereon is made needlessly large; and whereas, delays are often obtained, and injustice is done the holders of policies by said companies availing themselves of the technical irregularities almost invariably attendant upon a declaration upon said policies; therefore,

"1. Be it enacted," etc.

■ Before its passage a declaration on an ordinary policy of insurance was a difficult and tedious proposition, and so its purpose, made plain by title and preamble, was to make unnecessary this excess of

detail. Certain things are declared to be sufficient but not mandatory.

■ In *Morotock Ins. Co.* v. *Pankey*, 91 Va. 259, 21 S. E. 487, a motion to enforce a policy of insurance was made under section 3211 of the Code of 1887, which is now 6046 of the present Code (1919). At that time, section 6094 of the Code of 1919 here relied upon appeared as section 3251 of the Code of 1887, and the claim was made there, as here, that said last named section was mandatory and exclusive. This position the court held was untenable, and its holding is not affected by the fact that a copy of the policy was actually filed. Section 6046 is general in its terms and subject to certain irrelevant restrictions is available to any person entitled to maintain an action at law. The motion, in our judgment, is amply definite. No request was made for a bill of particulars, a procedure designed to give specific information of the details of plaintiff's claim, whenever such information does not appear in the motion itself. *Wessel* v. *Bargamin*, 137 Va. 701, 120 S. E. 287.

■ There is no merit in the demurrer.

In the policy of insurance it was provided that the premium should be paid on or before Monday of each week, but that should the insured die, when arrears in payments had not exceeded four Mondays, the association would still be liable. This grace extension expired on January 10th, the day before Blanche Matthews died. Its nonpayment brought the policy to an end, unless some reason valid in law can be shown for the nonapplication of the general rule.

Four weekly payments were actually due and unpaid, but the time within which payment could be made in three instances had not passed. It was the non-payment of the fourth which it is claimed worked a

forfeiture. All of them, so far as the right to have them credited upon the debt arising out of Ella's policy is concerned, stand upon a common footing.

Ella Goodman was Blanche Matthews' sister. She died on December 23, 1926. At her death Blanche Matthews was the beneficiary under two policies issued by this association to her, the amount due being $144.00. Proper proof of death was promptly delivered and this sum became due and payable some days before Blanche Matthews died.

It is conceded that it would have been the association's duty to apply on unpaid premiums anything which might have been due on account of the policy sued upon, for forfeitures are not favored, but it is said that this rule has no application when the indebtedness arises out of an unrelated contract, and that the indebtedness here does so arise, since the amount due to Blanche Matthews was due on account of a policy on the life of Ella Goodman, and not on account of this in judgment.

There is some conflict of authority as to this proposition, but the distinction sought to be established is not of special importance in this case.

 J. A. Pilcher was the company's collector. From the plaintiff's evidence it appears that when he called upon Blanche Matthews to collect the premium due, she then complained of the fact that the company, on its part, had not paid her the amount due on the policy of her sister, Ella. He went away and returned bringing with him Mr. W. F. Thompson, assistant superintendent of the insurance company, whose duties were "to assist the men in writing business, keeping the books and general work," and thereupon this assistant superintendent told Blanche that she need not bother about paying this premium, but that

he would bring her promptly the $144.00, less the necessary deduction, and that this would continue her policy in force. She relied upon his promise, as she had a right to do. When we remember the helplessness of people circumstanced as this negro woman was, it is hard to understand that more could have been expected of her. She owed the association fifty-nine cents, and the association owed her $144.00. The collecting agent and the assistant superintendent, who are probably the only people connected with this company that she had ever heard of, had agreed to credit her premium upon the amount due her and to keep her policy in force.

*Mercer* v. *South Atlantic Ins. Co.*, 111 Va. 699, 69 S. E. 961, is cited to show that the collecting agent had no such power, and it does so hold, but that of an assistant superintendent, who maintained an office in Hampton and did "general work," is impliedly greater. His sonorous title itself was well calculated to inspire an ignorant clientele with confidence. The insured had the right to assume that it was, and she was not bound by unknown restrictions.

"One who has a notice of any limitation upon the power of an agent has the right to deal with the agent upon the faith of his ostensible powers, whether his agency is general or special." Headnote 4, *Mutual Life Ins. Co.* v. *Brown*, 137 Va. 278, 119 S. E. 142; *Virginian Ry. Co.* v. *Stokes*, 134 Va. 186, 113 S. E. 704.

"The tendency of the courts at the present day is towards a liberal, rather than a strict construction of an agent's power." Joyce on Insurance, section 425. *Harrison* v. *Prov. Relief Ass'n*, 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616.

■ "In actions on insurance policies the insured should be protected by every proper presumption, for it is the policy of the court to uphold such contracts when it can be in good conscience done, and usually the intervention of death prevents any statement by the insured of her side of the controversy." *Flannagan* v. *Northwestern Mut. Life Ins. Co.,* 152 Va. 38, 146 S. E. 353, decided by this court January 27, 1929.

We are of opinion that this assistant superintendent had apparent power to make this contract. The agreement itself is vigorously questioned, but is sustained by substantial testimony, amply sufficient to support the verdict.

■ ■ The next assignment deals with the exclusion of testimony. In the petition for writ of error it is thus stated:

"On cross-examination, the witness, Maggie Thompson, sister of the plaintiff, Eva Clark, and the only witness that testified to the alleged agreement besides the plaintiff, was asked the following question: 'Were you indicted under the name of Maggie Carey at the December term of this court, 1922, for storing ardent spirits for sale and tried on February 9, 1923, convicted and given one month in jail and $100.00 fine?'"

Maggie Thompson testified in chief for the plaintiff. On cross-examination she was asked substantially the same question embodied in this assignment of error, and was recalled by counsel for the defendant near the end of the trial, that he might pursue the subject further. In the first instance her denial was half-hearted. If her answers be taken as admissions, then her record was in fact before the jury. If they be taken as denials, then the defendant is bound by them, for a witness cannot be cross-examined as to collateral matters merely for the purpose of impeachment and to

discredit her testimony, manifestly the major purpose here. *Forde* v. *Commonwaelth*, 16 Gratt. (57 Va.) 547; *Balto. Ches. & A. R. Co.* v. *Hudgins*, 116 Va. 27, 81 S. E. 48; *Norfolk Southern R. Co.* v. *Banks*, 141 Va. 715, 126 S. E. 622; *Robinson* v. *Kistler*, 62 W. Va. 489, 59 S. E. 505; Greenl. Evidence, section 449.

▉ If we put aside all that occurred on the first cross-examination, as to which no complaint is made, the assignment is still without merit, for when recalled objection was interposed and sustained. She did not answer and the record does not show what answer was expected.

▉ "In order to show that the trial court erred in rejecting an offer of evidence, or in excluding evidence, the bills of exception must show what the party offering the witness expected or proposed to prove by him. If the witness is permitted to answer, and the answer is excluded, it should show what the answer was. This is necessary because it may be that the witness had no knowledge upon the subject, or what he knew was irrelevant or immaterial. A judgment will not be reversed because evidence has been excluded or rejected by the trial court unless its materiality is made to appear." *Jones* v. *Commonwealth*, 135 Va. 550, 115 S. E. 378.

In these circumstances an examination of the substantive law governing the admissibility of this evidence would be unprofitable.

Instructions "A" and "C" given for the plaintiff are objected to because they told the jury that notice to the collecting agents was sufficient. They are to be read in the light of the evidence. Thompson was something more than a collecting agent and the agreement which he made to credit the unpaid premium on the balance due from his company has heretofore been considered.

Instruction "I" tendered on behalf of the defendant was properly refused. It, in substance, told the jury that a failure to pay the premium forfeited the policy. It, as an abstract proposition of law, the instruction, was sound, but when applied to the evidence in the case, was misleading.

Instruction "II" was also properly rejected. It told the jury that the agreement made by Pilcher and Thompson did not bind the company. Instruction "VI" also told the jury that this agreement was invalid unless these agents communicated it to their company and unless it was ratified by it. As we have seen, it was one in the apparent scope of the authority of the assistant superintendent and the insured had the right to rely upon it. Rejected instruction "VII" told the jury that the company was not liable if it afterwards paid to the insured's personal representative the $144.00 due on her sister's policy. It also was manifestly improper.

The judgment is right and must be affirmed. It is so ordered.

*Affirmed.*