# Richmond

## ROYAL INDEMNITY COMPANY v. EDWIN D. HOOK, JR., AN INFANT, ETC.

January 15, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Gregory, JJ.

The opinion states the case.

*Caskie, Frost & Coleman,* for the plaintiff in error.

*S. DuVal Martin* and *B. B. Campbell*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

In 1926, E. R. Rosser, the proprietor of a small retail grocery store in Lynchburg, for the more convenient dispatch of business and for the more prompt delivery of sales, purchased from the Lynchburg Motor Company, sometimes known as the Merryman Motor Company, formerly the Rustburg Motor Company, a Star roadster. This purchase was made under a conditional sales contract whereby title remained in the vendor to secure to it the balance due. Afterwards he received from Roanoke Hare and Chase, Incorporated, an undated notice requesting payment of an installment due thereon as of January 10, 1927. On September 10, 1926, Hare and Chase, Incorporated, of Philadelphia, notified him that it was the owner of these purchase money obligations, and on September 13, 1926, Roanoke Hare and Chase, Incorporated, wrote him that they had recently handled these notes. From this documentary evidence it appears that the notes on the original Rosser purchase passed back and forth between the Philadelphia company and the Roanoke company at their convenience.

Rosser had in his employment a boy, W. A. Goad, then seventeen years old. Goad had been using this car to deliver groceries, etc., for Rosser, and for reasons satisfactory to himself wished to buy it.

Rosser was willing to sell, but since young Goad was not of age, and since there was an outstanding conditional contract, he was at a loss as to exactly how to proceed, and went to his vendor, the Lynchburg Motor Company, for advice. He was there told that they would send to help him a Mr. Greathead. Mr. Greathead was an employee

of the Roanoke company. He came and at his suggestion title to the car was placed in Mrs. Callie V. Goad, mother of W. A. Goad. This Roanoke company had already written to Mr. Rosser that they made a specialty of automobile insurance. Greathead, when he came, urged that the car be insured. It was insured and at his suggestion the insurance premium was divided among and added to the purchase money notes, afterwards collected by the Roanoke company.

This transaction, in its every detail, was worked out by Greathead, and the policy which issued is that in judgment here. He wrote it, and this there appears:

"Agent or Broker    A. Hare and Chase
"City            Philadelphia, Pennsylvania
                "Countersigned by
    "Charles Lunsford and Sons, Roanoke, Virginia."

Whether this was printed on the original policy, or written in when it was issued, we do not know. It is there stated that Mrs. C. V. Goad was the insured and that she was a seamstress. In it the company undertook to indemnify against loss—

"The named insured, and/or any person or persons while riding in or legally operating any of the automobiles described in the schedule of statements, and/or any person, firm or corporation legally responsible for the operation thereof, provided such riding, use or operation is with the permission of the named insured, or, if the named insured is an individual, with the permission of an adult member (other than a chauffeur or domestic servant) of his household."

The statement as to ownership is warranted to be true, and it is stipulated that "any assignment or change of interest hereunder, whether voluntary or involuntary, shall

render the policy void unless consented to by indorsement hereon, signed by some official thereunto authorized in writing by the company."

After this, and in the summer of 1927, there was an accident. Goad found it inconvenient to have the machine repaired and to continue his payments. For business reasons at that time he left Rosser's employment. Rosser said: "He told me he thought he could make more money at some other work and I asked him what he wanted to do about the payments and he said: 'Well, he didn't want to give the car up, he didn't want the finance company to take it back and for me to take the car on over there and use it and make those payments as I had been making them and then as soon as he got the money together he would pay me back and take his car.'"

There was no change in title at this time, and these conditions were to continue until the first of January, 1928, when title might be taken over by Rosser if Goad elected to surrender his interest. After this the car was used exactly as it had been, and used with the knowledge and consent both of Goad and of his mother. Goad did nothing in the intervening months to indicate any purpose to surrender title, and did actually pay his license tax for the year 1928. In the meantime, he used it occasionally but not often.

On December 10, 1927, Rosser's clerk, S. P. Coleman, in the conduct of his employer's business, accidentally drove it against and injured E. D. Hook, an infant, the plaintiff here. Hook brought suit against Rosser, Coleman and Mrs. Goad, and recovered a judgment for $2,500. That judgment was set aside as to Mrs. Goad, but stood as against Rosser and Colemen. Execution thereon, because of insolvency, has been returned, "no effects."

Thereupon, Hook instituted this proceeding against plaintiff in error, under Code, section 4326-a, to recover the amount of his judgment against Rosser and Coleman,

together with the costs of the former proceeding, on the theory that Rosser and Coleman were covered under the policy. A jury was waived, and after hearing the evidence and argument the court entered the judgment complained of.

Greathead had told Rosser to call up Mr. Thornhill in case of an accident, and this he did. Mr. Thornhill answering this call said that he would get hold either of the insurance company or of Greathead. Nothing was done, and Rosser called Mr. Thornhill again. Greathead then came and the situation was explained to him. Greathead then said that he would go to Roanoke and take it up with the office there. Soon afterwards he returned and announced that his company denied liability.

■ When we remember that Greathead worked for the Roanoke company, and was sent by it to map out a scheme for transfer of title from Rosser to young Goad; that he did work out such a scheme; that he did secure the policy of insurance; that the premiums thereon were thereafter collected in monthly installments by the Roanoke company; that he left word he should be notified in case of an accident; that when an accident did actually occur, he, upon notice from the company, turned up to examine into it, and afterwards served notice that the company would not pay; we have no difficulty in reaching the conclusion that Greathead was the company's agent. Greathead's own declarations are not sufficient to prove his own agency, but his course of conduct and that of his company were, we think, sufficient for this purpose.

■ Certain elementary principles are to be remembered when we come to deal with cases of this character, submitted by consent without the intervention of a jury. We have no authority to interfere with the judgment of the court below unless it appears from the evidence to be plainly wrong, or without evidence to support it. Code, section

6363. Nor can we undertake to discuss conflicts in testimony or the impeachment of witnesses. All these matters have been settled by the judgment of the court below and their discussion here would be unfruitful. We do not by this intend to say that in such a case every possible conflict is settled by the judgment of the trial court, for it does not come to us as on a demurrer to the evidence.

"In considering this assignment of error, we, of course, cannot enter upon any attempt to reconcile the conflicts in the evidence, of which there are very many. Our sole function is to determine whether the record discloses sufficient evidence of probative value to support the verdict, if such evidence was found credible by the jury." *Hunter* v. *Burroughs*, 123 Va. 113, 96 S. E. 360, 369.

■ The statements contained in the application for the policy which are carried into it are warranted by the applicant to be true. That they are untrue is not in dispute. Mrs. Goad was said to have been the owner when she was not, and the title was clouded by a conditional sales contract. These are not idle stipulations, and it is easy to understand how an insurance company might be willing to issue a policy to A. which it would refuse to B. One risk might be good and the other bad. The answer as to ownership was material to the risk and was untrue, and for that reason section 4220 of the Code does not govern.

The defects noted, but for considerations to be stated hereafter, are sufficient to invalidate the policy. *North River Ins. Co.* v. *Atkinson*, 137 Va. 313, 119 S. E. 46; *Michigan Automobile Ins. Co.* v. *Van Buskirk*, 115 Ohio St. 598, 155 N. E. 186; *Andrews* v. *Bull Dog Auto Fire Ins. Association* (Mo.), 258 S. W. 714; Joyce on Ins. (2d ed.), sections 1951, 1962; *Flannagan* v. *Northwestern Mutual Life Ins. Co.*, 152 Va. 38, 146 S. E. 353.

The principle here involved does not apply for the reason that the facts were known to the insurance company when

the policy was issued, and if not known, it was charged with knowledge, for the scheme finally adopted was suggested by its agent. When the Roanoke company first sent Greathead to adjust the troubles attendant upon transfer of title to Goad, it must have known what these troubles were.

■ "The general rule that the knowledge of an insurance agent is imputable to the company is applied, in many jurisdictions, to soliciting agents with reference to matters made known to them prior to the execution of the policy. The rule is no doubt based on the theory expressed in *West End Hotel and Land Co.* v. *American Fire Ins. Co.* (C. C.), 74 Fed. 114, that before the execution of a policy the powers and authority of a soliciting agent are coextensive with the business intrusted to his care, so that his positive knowledge of material facts is chargeable to his principal." Cooley's Briefs on Insurance, page 4049.

This rule is not always followed (*Id.*, page 4051), but it is the majority rule as it is the rule in Virginia.

■ Knowledge to the insurance agent as to matters affecting the policy when issued is knowledge to the company; provisions as to forfeiture and avoidance of breach of conditions being for its benefit, may be waived by it, and the company is estopped to set up forfeitures when, with such knowledge, it issues a policy and accepts a premium. *Lynchburg Fire Ins. Co.* v. *West,* 76 Va. 575; 44 Am. Rep. 177; *Harrison* v. *Prov. Relief Ass'n,* 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616; Michie's New Digest Va. & W. Va. Rep., volume 5, pages 907, 940, 941, where the authorities are collected.

■ "The insurance agent, within the general scope of the business he transacts, is *pro hac vice* the insurance company. What he knows they know. What he does they do. He has power to bind and to loose, and no limitation on his power unknown to strangers will bind them." *Coles* v. *Jefferson Ins. Co.,* 41 W. Va. 261, 23 S. E. 732, 733.

"The powers of the agent are, *prima facie*, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company, establishing a local agency, must be held responsible to the parties with whom they transact business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal." *Union Mut. L. Insurance Company* v. *Wilkinson*, 13 Wall. 222, 235, 20 L. Ed. 617.

■ " 'The tendency of the courts at the present day is towards a liberal, rather than a strict construction of an agent's power.' Joyce on Insurance, section 425." *Harrison* v. *Prov. Relief Ass'n*, 141 Va. 659, 126 S. E. 696, 40 A. L. R. 616.

With these statements of the law we are in full accord.

■ That Hare and Chase, of Philadelphia, were general agents of the indemnity company is not denied. The policy was not written in Pennsylvania but in Virginia. This general agent in Philadelphia could only act in Virginia through some agent here. It might have acted through Lunsford, described in the application as a broker, but there is nothing to show any connection between him and it, beyond the fact that his name was either written or printed there. That the Roanoke company was its subsidiary and representative in Virginia is shown, we think, by their course of dealings with each other.

What was Greathead's status? Thornhill had once represented, in Lynchburg, Roanoke Hare and Chase. He testified that Greathead was employed by that corporation for about eighteen months, and that it was the subagent of the Philadelphia corporation. When Thornhill was with the Roanoke company, Greathead wrote insurance for it, and that company had, in its letter of September 13, 1926, said that it made a specialty of this. Greathead was not operating for Lunsford and does not appear to have had

any connection with him, and he did secure the policy for somebody. It is to be assumed that he was working for his employer and this assumption is strengthened by the fact that it was the Roanoke company which collected the premiums. When there was a loss it was Greathead who was sent to investigate it, and it was through him that the Roanoke company denied liability. The policy itself seems to have been carried on the books of the Philadelphia company as its business made manifest by a letter from them of January 16, 1928. These two companies stood together when the wind was fair, and must now do so in stress of weather.

We think it fairly clear that Greathead was a subagent, or clerk, for the Roanoke company. That company was a corporation and could only act through agents.

■ "Insurance companies know, or ought to know, when they appoint general agents, that, according to the ordinary course of business, they have clerks and other persons to assist them, and that their agents in many instances could not transact the business entrusted to them if they were required to give their personal attention to all of its details. It being necessary, therefore, and according to the usual course of business, for their agents to employ others to aid them in doing the work, it is just and reasonable that insurance companies should be held responsible not only for the acts of their agents but also for the acts of their agents' employees, within the scope of the agents' authority." *Goode* v. *Georgia Home Ins. Co.*, 92 Va. 392, 23 S. E. 744, 745, 30 L. R. A. 842, 53 Am. St. Rep. 817; *Northern Neck Mut. Fire Asso.* v. *Turlington*, 136 Va. 44, 116 S. E. 363. This is doubly true when the agent is a corporation.

"The business of an insurance agent is generally of such nature and extent that it requires the employment of subagents and clerks if it is to be taken care of properly. Such subagents or clerks may be regarded as agents of the com-

pany by an insured dealing with them. Hence it follows that notice given a subagent or clerk of matters vitiating. a policy will be imputable to the company, the same as though communicated to the regularly appointed agent." Cooley's Insurance Briefs, volume 5, 4045.

■ One who deals with an agent and has no knowledge of any limitations upon his power may deal upon the faith of his ostensible powers, whether this agency be general or special. *Home Beneficial Asso.* v. *Clark,* 152 Va. 715, 148 S. E. 811.

■ Neither Rosser, Goad, nor his mother ever saw anybody in connection with this policy but Greathead. It was his child. He came from a company which made a specialty of automobile insurance; he suggested that a policy be taken out; he procured it; he was to be called in case of an accident; he was called and came; and it was he who brought the message that the company would not pay. And in addition, the conduct of the defendant approaches a complete confession. No agent of any of these corporations interested have appeared to deny Greathead's authority. This evidence must have been immediately at hand and available if there were any such in being. The presumption is that it was not. Able and alert counsel for the indemnity company would have produced it if possible.

■ "Failure to call an available witness possessing peculiar knowledge concerning facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference sometimes denominated a 'strong presumption of law' that the testimony of such uninterrogated witness would not sustain the contention of the party. *16 Cyc. 1062.*" *Altavista Cotton Mills* v. *Lane,*

133 Va. 1, 112 S. E. 637, 640; *Kress & Co.* v. *Musgrove*, 153 Va. 348, 149 S. E. 453.

By way of recapitulation, the general agent in Philadelphia operated through a subsidiary corporation with an office in Roanoke and an agent in Lynchburg. This agent knew the facts. His company is charged with this knowledge, and is now estopped to question these statements written into the policy.

■ Rosser and his clerk were using this automobile at the time of the accident, as had been the custom, and with the knowledge and consent both of Mrs. Goad and of her son, which brings this case within the letter of the policy.

■ It is next said that there has been a change of interest which under its terms forfeits the policy, since no indorsement of consent is written thereon. We have already seen that this automobile, which was used by Rosser to deliver goods, had been sold by him to a clerk who was engaged in making such delivery, and who continued to so use this car until some time in August, 1927. He then left Rosser's employment but left his car with him to be used as it had theretofore been used, the conditions under which it was left with Rosser being, as stated by him: "He didn't want to give the car up, and he didn't want the finance company to take it back, and for me to take the car on over there and use it and make those payments as I had been making them and then as soon as he got the money together he would pay me back and take his car."

It was further understood that Rosser was to get the car back if Goad did not repay him for advancements and for the balance due by the first of January, 1928, and it was during the life of this arrangement, in December, 1927, that the accident occured.

It thus appears that there was no real change of interest here in August, 1927. Title of record remained in Mrs. Goad. The car continued to be used to deliver Rosser's

groceries. Goad continued to be the real owner, and did use the car to a limited extent during all of this time. The situation was to have changed on the first of January, following, unless he paid to Rosser what might then be due on account of this car, but that time had not come when the accident occurred. Since there was no actual change in the use to which the car was put, nothing that was done put any additional risk upon the indemnity company. There was no real change of interest or conditions and so this assignment of error is not well taken.

Finally, it is said that the court erred in admitting evidence of Greathead's knowledge and of statements made by and to him. That evidence has already been stated in some detail and nothing is to be gained by its restatement.

Agency may be proven in many ways, among them by the testimony of the agent himself, and when from extrinsic sources a *prima facie* case is made out, the agent's own declarations and admissions become competent. Frequently it is established and has, of necessity, to be established by circumstantial evidence. *Lysle Milling Co.* v. *Holt & Co.*, 122 Va. 565, 95 S. E. 414.

This case was tried by the judge and not by a jury. If we eliminate all testimony about admissibility of which there can be question, enough remains to show that Greathead was, at the least, a subagent with authority to act.

Upon the whole, we are of opinion that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*