UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DEBORAH MANUEL, formerly known
as Deborah Stiltner, formerly known
as Deborah Sutphin,
Plaintiff-Appellant,

v.                                                                        No. 96-1987

EQUITABLE LIFE ASSURANCE SOCIETY
OF THE UNITED STATES,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CA-95-1022-2)

Argued: October 29, 1997

Decided: December 31, 1997

Before WILKINSON, Chief Judge, and RUSSELL and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Alfred Bernard, III, TRAPANI, BERNARD & LLOYD,
Norfolk, Virginia, for Appellant. Kenneth Hincks Lambert, Jr., WIL-
LIAMS, KELLY & GREER, P.C., Norfolk, Virginia, for Appellee.
**ON BRIEF:** Philip R. Trapani, Jr., TRAPANI, BERNARD &
LLOYD, P.C., Norfolk, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Deborah Manuel ("Manuel"), formerly known as Deborah Stiltner, sued the Equitable Life Assurance Society of the United States (the "Equitable"), for breach of contract under Virginia law claiming that the Equitable failed to honor the terms of the life insurance policy it had issued on the life of Manuel's deceased husband, Michael R. Stiltner ("Stiltner").[1] Following a bench trial, the district court ruled in favor of the Equitable. We affirm.

I.

In March 1989, the Equitable issued policy # 89,020,241 insuring the life of Stiltner in the amount of $100,000 (the"1989 policy"). In April 1990, following Stiltner's application for a $50,000 increase in coverage, the Equitable issued policy # 90,028,224 insuring his life in the amount of $150,000 (the "1990 policy"). One year later, following Stiltner's application for another $50,000 increase in coverage, the Equitable issued policy # 91,024,332 insuring Stiltner's life for $200,000 (the "1991 policy"). Each policy named Manuel as the beneficiary and all three applications for life insurance coverage were attached to the 1991 policy.

On September 19, 1991, Stiltner died of a gunshot wound. Four days later, Manuel made a claim for the entire $200,000. On March 13, 1992, the Equitable notified Manuel that it decided to (1) pay her $100,000 plus interest on the 1989 policy; (2) rescind the 1990 and 1991 policy increases because Stiltner had made material misrepresentations in his applications for those increases in coverage;[2] and (3)

_____

[1] Manuel filed this action in Norfolk Circuit Court. The Equitable timely removed the case to the United States District Court for the Eastern District of Virginia.

[2] Although Stiltner asserted in his original and subsequent applications for coverage that he had neither used any controlled substance in the last

2

return to her the premiums, which Stiltner had paid on the 1990 and 1991 policies.

In January 1993, the Equitable paid Manuel $105,282.19, representing $100,000 in principal and interest. When the Equitable mailed Manuel the check for the premiums on the two "rescinded" policies, she refused to accept the payments and returned the checks to the Equitable. Manuel sued the Equitable for the remaining $100,000 plus interest under the 1991 policy, asserting that the three life insurance policies constituted one unseverable policy--the 1991 policy, and that the Equitable had waived its right to contest the 1990 and 1991 increases for coverage because it had started paying her under the terms of the 1991 policy. Following a bench trial, the district court found that the 1991 insurance policy was severable. Additionally, the district court found that the Equitable involuntarily paid Manuel the $105,282.19 sum because it was legally obligated to do so under the terms of the 1989 insurance contract pursuant to Virginia Code §§ 38.2-3107 & 38.2-3305.**3** The district court further noted that the compelled payment did not constitute a waiver by the Equitable of its right to contest the validity of Stiltner's 1990 and 1991 applications for increased insurance coverage. Finally, the district court found that Stiltner made material misrepresentations in his 1990 and 1991 applications for life insurance, and that such material misrepresentations released the Equitable from its obligation to pay under those policies. This appeal followed.

II.

When the Equitable issued the 1991 policy, the original application for life insurance and the 1990 and 1991 applications for increases in

_____

ten years, nor received counseling or treatment for the use of alcohol or drugs, the Equitable discovered overwhelming evidence that he had used controlled substances and received counseling and treatment for substance abuse.
**3** VA. CODE ANN. §§ 38.2-3107 & 38.2-3305 (Michie 1994) (incontestablitiy provisions barring insurance companies from contesting the validity of an insurance contract after the policy has been in force during the lifetime of the insured for two years from its date of issuance).

coverage were attached to the document. The applications evidenced the three risks, which the Equitable separately underwrote, over a period of three years, to reach the face value of the 1991 insurance contract.[4]

Under Virginia Code §§ 38.2-3107 & 33.2-3305, Virginia's legislature provides the insurer with a two-year window following the issuance of a life insurance contract within which it may contest the contract's validity by reason of material misrepresentations upon the corresponding application.[5] The Code sections benefit both the insured and their beneficiaries, because they provide the insurance companies with sufficient time in which to discover misrepresentations made in the applications for coverage and it prevents insurers from receiving premiums while harboring a policy defense to be raised only if and when called upon to pay under the policy.[6]

In the instant case, the 1991 policy contained an"INCONTEST-ABILITY" paragraph, which stated that, "[The Equitable has] the right to contest the validity of this policy based on material misstatements made in the application for this policy." Thus, when Stiltner died as a result of a homicide within two years of the issuance of the policy, the Equitable, pursuant to Virginia's incontestability statute, exercised its right to investigate and contest the validity of Stiltner's application for the increase in coverage. The Equitable's investigation revealed that Stiltner made material misrepresentations in his application for an increase in coverage. Such material misrepresentations voided the 1991 contract to the extent that the 1991 policy increased the 1990 policy by $50,000.

With the 1991 obligation for an increase in coverage voided, the Equitable considered that its 1989 and 1990 obligations, represented by the attached applications, may still be binding. Review of the 1990 application for an increase in coverage, revealed, however, that Stilt-

_____

[4] The face value on the 1991 policy derived from the Equitable's obligation to pay: $100,000 in 1989, $50,000 in 1990 and $50,000 in 1991.
[5] VA. CODE ANN. §§ 38.2-3107 & 38.2-3305 (Michie 1994).
[6] **Harrison v. Provident Relief Ass'n**, 126 S.E. 696, 701 (Va. 1925)(case extolling the public policies behind the predecessor to the current incontestability statutes).

ner had made material representations therein. Said misrepresentations voided the 1990 obligation to the extent that the 1990 policy increased the original 1989 policy by $50,000.

With the 1990 obligation voided, the 1989 obligation remained. Pursuant to the incontestability statute, the 1989 policy could not be challenged because it had been in force for more than two years during Stiltner's lifetime from it date of issuance. Therefore, despite the fact that Stiltner had also made material misrepresentations in his original application for insurance, the Equitable could not contest the 1989 application. Accordingly, the Equitable paid Manuel $105,282.19 under the terms of the 1989 policy.

The public policies behind Virginia's incontestability statute support severing the 1991 contract into three separate obligations whose respective contestability periods ran from their issue dates. To prevent the Equitable from contesting the applications would amount to a windfall to the applicant and beneficiary, and deprive the Equitable of a valid defense under the law. Accordingly, we hold that the Equitable, having acknowledged its obligation under the 1989 policy, is not required to pay Manuel the face value of the 1991 contract.

III.

Having carefully reviewed the record, briefs, and contentions of the parties at oral argument, we hold Manuel's remaining issues to be without merit. Accordingly, we affirm the judgment and order of the district court.

AFFIRMED

5